NORMAN L. COUSINS, Appellant, v INSTRUMENT FLYERS, INC., et al., Respondents.

First Department, July 14, 1977

*Alfred S. Julien* of counsel *(Fuchsberg & Fuchsberg,* attorneys), for appellant.

*William J. Junkerman* of counsel *(William F. Martin, Jr.,* with him on the brief; *Haight, Gardner, Poor & Havens,* attorneys), for Instrument Flyers, Inc., respondent.

*Benjamin E. Haller* of counsel *(Hill, Betts & Nash,* attorneys), for Piper Aircraft Corp., respondent.

EVANS, J. Plaintiff, the pilot of a rented aircraft, was injured when it ran out of fuel and crash-landed in a farmer's field in Pennsylvania. This action is brought to recover damages against Piper Aircraft Corporation, the manufacturer of the airplane, and against Instrument Flyers, Inc., the owner and lessor of the airplane.

The common-law negligence cause of action was dismissed on consent leaving the one predicated on strict products liability. Following a jury verdict in favor of the defendants, plaintiff moved for a new trial, or for a judgment for plaintiff *non obstante veredicto,* claiming Pennsylvania law applies and that it was error for the court to apply New York law.

Prior to 1960, New York was a strict *lex loci delictus* State. In *Goldberg v American Airlines* (23 Misc 2d 215, 217, affd 12 AD2d 906), Mr. Justice STEUER said: "It is the place of injury that determines the rights of the parties". Beginning with *Babcock v Jackson* (12 NY2d 473), exceptions to the strict *lex loci delictus* rule began to appear. In *Neumeier v Kuehner* (31 NY2d 121, 127), it was held: "When, in *Babcock v. Jackson* (12 N Y 2d 473, *supra),* we rejected the mechanical place of injury rule in personal injury cases because it failed to take account of underlying policy considerations, we were willing to sacrifice the certainty provided by the old rule for the more just, fair and practical result that may best be achieved by giving controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation."

Resolution of the conflicts of law questions now requires examination of the facts and circumstances in the case in order to determine which jurisdiction has the most significant relationship with the issues involved.

This action was commenced in New York, where plaintiff

resides. Defendant Piper is a Pennsylvania corporation doing business in New York with its principal place of business in Pennsylvania, and defendant Instrument Flyers is a New Jersey corporation whose sole asset is the airplane in question which was hangared in New Jersey. Plaintiff rented the aircraft from Instrument Flyers in New York. At the time of rental, plaintiff was a lawyer associated with a New York law firm. His purpose in renting the plane was to fly to Michigan on firm business, and incidentally to transport the wife of one of the firm's partners to Michigan where she was to join her husband. On the date of the accident, plaintiff picked up the airplane in New Jersey, flew to Queens County and then to Westchester Airport where he picked up his passenger, topped off his fuel tanks and filed a flight plan indicating the Jefferson-Ashtabula Airport in Ohio as his destination. En route, the airplane ran out of fuel and crash-landed in a field near Erie, Pennsylvania.

It is too clear to dispute that New York State has a more significant relationship to the occurrence and to the parties than has the State of Pennsylvania. The only contact this case has with Pennsylvania is the fact it is the State of incorporation of one of the defendants and is the State in which the airplane fortuitously crash-landed. New York, on the other hand, appears to be the center of gravity of significant contacts. Plaintiff resides in New York, he is employed in New York, the flight was in connection with business of plaintiff's New York law firm, New York State is the place where the rental agreement for the plane was entered into, where the flight originated, and was the return destination of the airplane. Finally, New York State is where the plaintiff's cause of action was commenced. On the basis of the many foregoing elements, this court is satisfied that New York law properly governed the elements of and the defenses to plaintiff's strict liability cause of action.

Citing *Codling v Paglia* (32 NY2d 330), the trial court ruled contributory negligence was a defense in a strict liability case. Plaintiff's reliance on "second accident" theory is of no avail. Simply stated, he claims the aircraft was defective because it lacked shoulder harnesses and other alleged crash-worthiness features, which defects caused him injuries in excess of injuries he would have suffered if the aircraft had been properly equipped. Plaintiff argues contributory negligence should not bar injury—causing defects as opposed to accident-causing

defects, and seeks support for his position in *Spier v Barker* (35 NY2d 444).

Plaintiff's reliance is misplaced. *Spier v Barker (supra)* holds, *inter alia,* that nonuse of an available seat belt should be strictly limited to the jury's determination of the plaintiff's damages and in mitigation of same, and should not be considered by the triers of fact in resolving the issue of liability, and has no discernible relation to a theory that would remove contributory negligence as a bar to secondary or aggravated injuries.

The elements of, and defenses to, a strict products liability cause of action are specifically set forth in the Court of Appeals decision in *Codling v Paglia* (32 NY2d 330, 342, *supra):* "We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided * * * (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages."

This position of the Court of Appeals has been repeated in subsequent strict products liability decisions, specifically *Velez v Craine & Clark Lbr. Corp.* (33 NY2d 117), *Bolm v Triumph Corp.* (33 NY2d 151) and *Micallef v Miehle Co., Div. of Miehle-Goss Dexter* (39 NY2d 376).

Plaintiff contends that *Bolm (supra)* is meaningless unless interpreted to remove contributory negligence as an issue in crash-worthiness actions. On the contrary, *Bolm* rejects the thesis that one who is contributorily negligent may recover and explicitly holds that the standards for imposing liability for unreasonably dangerous design defects are general negligence standards, citing *Larsen v General Motors Corp.* (391 F2d 495, 502).

The trial court was therefore correct in charging contributory negligence as a defense in this strict products liability action.

Accordingly, judgment, Supreme Court, New York County, rendered August 17, 1976, after a trial by FRAIMAN, J., and a jury, should be affirmed without costs.

CAPOZZOLI, J. (dissenting). In this case we have a New York plaintiff, a Pennsylvania manufacturer, a New Jersey owner lessor, and the aircraft was being piloted by the plaintiff, with

Ohio its destination. The accident occurred in Pennsylvania, the State in which the defendant, Piper Aircraft Corp., has its home office. The defendant, Instrument Flyers, is a New Jersey corporation, with its principal base of operations and primary corporate address and office at Teterboro Airport, Teterboro, New Jersey. The aircraft was registered, based and insured there.

Plaintiff had used the defendants' aircraft on 28 different occasions prior to December 19, 1968. Each time that the plaintiff arranged for the use of the aircraft it was to further his own experience as a pilot and he always went to New Jersey, where the aircraft was based, to take possession of it. On this last occasion, after which the accident happened, the flight originated at Teterboro Airport, in New Jersey, and was to end there after a planned trip to Ohio.

Although the old rule of *lex loci delicti* is no longer strictly applied, as it formerly was, the fact still remains that, unless the circumstances of a particular accident justify an exception to such rule, that rule still has force. This rule is displaced when the rights and liabilities of the parties are determined by the law of the State which has the most significant relationship to the occurrence and the parties. (See Restatement, Conflict of Laws 2d, §§ 6, 145, 146.)

As was said in *Babcock v Jackson* (12 NY2d 473, 484): "Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." In the same case (p 483), we find: "Where the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place."

In *Neumeier v Kuehner* (31 NY2d 121, 125-126), Chief Judge FULD said: "It is clear that, although New York has a deep interest in protecting its own residents, injured in a foreign state, against unfair or anachronistic statutes of that state, it has no legitimate interest in ignoring the public

policy of a foreign jurisdiction". Again, (p 126), the court approved the language of Justice MOULE, in his dissenting opinion (37 AD2d 70, 75-76), where he said: "While New York may be a proper forum for actions involving its own domiciliaries, regardless of where the accident happened, it does not follow that we should apply New York law simply because some may think it is a better rule, where doing so does not advance any New York State interest, nor the interest of any New York State domiciliary." In the concurring opinion of now Chief Judge BREITEL, in the same case (p 131), we find the following: "What the *Babcock* case * * * taught and what modern day commentators largely agree is that *lex loci delicti* is unsoundly applied if it is done indiscriminately and without exception. It is still true, however, that *lex loci delicti* is the normal rule * * * to be rejected only when it is evident that the situs of the accident is the least of the several factors or influences to which the accident may be attributed". Wherever departure from the rule of *lex loci delicti* has been permitted in New York, it has been on the theory that that State had a greater concern or interest in the controversy, and the parties, and had closer contacts than the State where the accident occurred.

What is the policy of Pennsylvania insofar as the regulation of the conduct of its citizens within its borders is concerned, more particularly with reference to manufacturers and sellers of products for use by a consumer? Since the home office of Piper was located in Pennsylvania, its standard of conduct clearly was governed by the laws of Pennsylvania.

It seems clear that Pennsylvania has a strong policy in cases involving products liability. It is not sufficient for the seller or lessor of a product to show that he had exercised proper care in design, manufacture and distribution of the product. Such a person is held to strict accountability and contributory negligence in that State is no defense. On the other hand, in our State, contributory negligence is a defense in a products liability case. Hence, it becomes most important to determine which of these two States has the strongest interest in the case at bar in the issue presented.

In the case of *Webb v Zern* (422 Pa 424), the court held that the seller of a product in defective condition, which renders it unreasonably dangerous to a consumer, is liable for physical harm, even though the seller has exercised all possible care in the preparation and sale of the product, and even though the

consumer has not bought the product from the seller. It also specifically held that the court adopted the language in the Restatement of Torts 2d (§ 402 A).

Thereafter, in *Salvador v Atlantic Steel Boiler Co.* (457 Pa 24, 32) the same court reasserted its earlier ruling, that a "manufacturer by virtue of section 402A is effectively the guarantor of its products' safety".

Following the *Salvador* case *(supra),* the same court handed down a decision in *McCown v International Harvester Co.* (463 Pa 13, 15-16), in which we find the following: "In *Webb v. Zern* * * * this Court adopted Section 402A of the Restatement * * * Today, we complete our acceptance of the principles delineated in comment n by rejecting contributory negligence as an available defense in 402A cases."

Later, in the same opinion, the court said (pp 16-17): " 'Our courts have determined that a manufacturer by marketing and advertising his products impliedly represents that it is safe for its intended use.' *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 32, 319 A. 2d 903, 907 (1974). Based on that implied representation is the consumer's assumption that a manufacturer's goods are safe. Recognition of consumer negligence as a defense to a 402A action would contradict this normal expectation of product safety. One does not inspect a product for defects or guard against the possibility of product defects when one assumes the item to be safe. The law should not require such inspection or caution when it has accepted as reasonable the consumer's anticipation of safety. *We reject contributory negligence as a defense".* (Emphasis supplied.)

It is interesting to note that both sides, during the trial, espoused contrary views as to what law governed the case. Prior to the charge to the jury the defendants argued that Pennsylvania law governed, while the plaintiff insisted it was New York law. However, before the charge was delivered to the jury both sides shifted their positions, the plaintiff asking for a ruling that Pennsylvania law applied and the defendants argued that New York law applied. None of this, however, would excuse the court from the duty of applying the correct law since the request came prior to the charge to the jury. (See *Misler v Hilton Int. Co.,* 39 AD2d 946; *Frummer v Hilton Hotels Int.,* 60 Misc 2d 840; *James v Powell,* 19 NY2d 249.)

I can see no reason why New York law should apply to this case any more than New Jersey law or Ohio law. The conduct of defendant, Piper, occurred in Pennsylvania. That is where

its principal place of business was located and that is where the accident took place. Since that State casts the defendant in liability for its conduct, why should it not be held responsible, notwithstanding the fact that the law of the plaintiff's State, New York, would not?

No New York interest would be advanced by insisting on the application of New York law and neither would the interest of a New York State domiciliary be protected. On the contrary, the jury found in this case that the defendants were clearly at fault, but reported a verdict in their behalf because of the instructions given to them by the court that, if plaintiff was guilty of contributory negligence, the verdict had to be for the defendants.

At the same time that it reported its verdict the jury did something unusual. It presented to the court a written statement strongly condemning the conduct of the defendants, some excerpts are here quoted: "that Piper Aircraft Corp. has not lived up to public safety obligations * * *. The testimony we heard indicates that little if any research or manufacturers testing of their own products for safety is being conducted * * * We further believe that Piper Aircraft is obliged to continually correct all inaccuracies and omissions in their manuals and include all information pertinent to the safe flying of their aircraft * * * It is the lessor in this case, Instrument Flyers, responsibility to see that the manufacturer lives up to his responsibility of supplying all necessary information fully and accurately * * * It is also incumbent upon the lessor that a professional person be responsible for supplying information on the condition of the plane for potential lessees."

It is also interesting to note the comment of the court with reference to the above statement of the jury, sent to the court: "I'm mindful of the note that the jury sent to the Court. I have been on the bench for eight years, now, and this is the first instance that a jury has ever handed up such a note to the Court at the conclusion of a trial. And, I must say, that based on the evidence that I have heard in this case, I have no reason to disagree with the comments of the jury with regard to the defendants' conduct in this trial."

To me it appears that it is highly unfair to apply the New York law in a situation where Pennsylvania certainly has the greater interest in announcing its own standard of what it expects from manufacturers and dealers, particularly in view

of the fact that the defendant, Piper, has its place of business in that State and the accident also occurred there.

I therefore vote to reverse the judgment below and to order a new trial.

BIRNS, J. P., and SILVERMAN, J., concur with EVANS, J.; CAPOZZOLI, J., dissents in an opinion.

Judgment, Supreme Court, New York County entered on August 17, 1976, affirmed, without costs and without disbursements.