WALTER KNIERIEMEN, Respondent, v BACHE HALSEY STUART SHIELDS INCORPORATED, Appellant.

First Department, April 17, 1980

## APPEARANCES OF COUNSEL

*William M. Dallas, Jr.,* of counsel *(Wendy L. Addiss* with

him on the brief; *Sullivan & Cromwell,* attorneys), for appellant.

*Dan Brecher* for respondent

### OPINION OF THE COURT

LYNCH, J.

At the close of the trial of this customer's suit against his brokerage firm, the court charged the jury on four causes of action, breach of contract, negligence, fraud, and churning (inordinate trading to generate broker's commissions), but it declined the defendant's request for submission of a special verdict form to the jury. A general verdict was rendered awarding plaintiff $45,000 in compensatory damages and $30,000 in punitive damages. Upon inquiry, the foreman stated that the jury had found against the defendant on the negligence and churning claims, but had found no fraud or breach of contract.

The plaintiff, a college graduate and holder of a master's degree, is a resident of New Orleans and has most recently been employed as a merchant seaman. About 20 years ago he was employed as a stockbroker in New Orleans, where he gained some familiarity with the commodities market, having handled at least one commodities account. In 1975 he received $100,000 in insurance proceeds after his wife's death, and, at the suggestion of a broker friend in Atlanta, he invested this in blue chip stocks that would provide him an income of $600 to $700 a month.

In March, 1975, he ran into Newman, a broker with the defendant's New Orleans office whom he had known during his own time in the business. Plaintiff claims Newman convinced him to invest in commodities futures. Plaintiff also claims a long history of alcohol abuse and that following his wife's death he was drinking a quart of whiskey a day. He testified that he had been drinking when he encountered Newman and that their conversation took place in a bar.

The plaintiff deposited $10,000 with Newman in a nondiscretionary account, that is, that all trades had to be approved by the plaintiff. Plaintiff testified that between then and November, 1976 when his account was closed Newman usually contacted him in a bar to discuss his trades. He stated that he was usually drunk during these conversations and could not remember most of them.

The first $10,000 was lost and plaintiff gave Newman a like amount. This, too, was lost and the plaintiff deposited some of his blue chip stocks as collateral for continued trading. Some of this was sold to cover more losses. By the time the account was closed, the plaintiff had lost $21,824.90 on trades and had been charged $23,926.52 for commissions and taxes and $532.11 in interest.

The customer's agreement that plaintiff signed with the defendant when their business relationship commenced recited that "[t]his contract shall be governed by the laws of the State of New York". Relying at least in part on this recitation the trial court held that New York law should apply to all of the causes of action. The defendant maintains that Louisiana law should have been applied to the tort causes of action.

■ That the parties agreed that their contract should be governed by an expressed procedure does not bind them as to causes of action sounding in tort (see *Fantis Foods v Standard Importing Co.,* 63 AD2d 52, revd on other grounds 49 NY2d 317), and, as to the tort causes of action, there is no reason why all must be resolved by reference to the law of the same jurisdiction *(Babcock v Jackson,* 12 NY2d 473, 484).

The Court of Appeals has set down the following instruction for the resolution of choice of law problems *(Matter of Crichton,* 20 NY2d 124, 133-134):

"The choice of law decision we must make in this case should be guided by the same considerations that have guided our decisions in other choice of law cases [citations]. * * *

"The choice of law problem here should be resolved by an examination of the contacts which Louisiana and New York have with this controversy for the purpose of determining which of those jurisdictions has the paramount interest in the application of its law. As we noted in *Dym v. Gordon* (16 N Y 2d 120, 124), this process requires us 'first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.' [Citations.]"

■ ■ The first choice of law issue we must resolve is that of the availability of punitive damages. To do so we must look to the " 'law of the jurisdiction with the strongest interest in the resolution of the particular issue presented' " *(James v Powell,*

19 NY2d 249, 259, quoting *Babcock v Jackson,* 12 NY2d 473, 484). Under New York law punitive damages are awarded in "singularly rare cases" *(Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 360) where the "wrong complained of is morally culpable, or is actuated by evil and reprehensible motives" *(Walker v Sheldon,* 10 NY2d 401, 404). They are intended "to punish the wrongdoer for his misconduct and furnish a wholesome example" *(Merrick v Four Star Stage Light.,* 60 AD2d 806, 807).

Louisiana has a strong policy against punitive damages *(Vincent v Morgan's Louisiana & Texas R. R. & S. S. Co.,* 140 La 1027; *Fassitt v United T. V. Rental,* 297 So 2d 283 [La]), and their recovery is never permitted unless authorized by special statute *(Killebrew v Abbott Labs.,* 359 So 2d 1275, 1278 [La]; *Alexander v Burroughs Corp.,* 359 So 2d 607 [La]). The policy underlying this position is that a plaintiff should recover only that which will fairly and reasonably compensate him (see *Bacharach v Woolworth Co.,* 212 F Supp 83, 85).

The conclusion is evident that, plaintiff being a Louisiana domiciliary, that State has an interest in seeing that he receive only such damages as will fairly compensate him. At first glance, it would seem as easy to conclude that New York is interested in punishing the New York defendant for its misconduct and to provide a wholesome example. This would, however, ignore the obvious fact that it was not the New York defendant but its Louisiana agent, if anyone, who engaged in morally culpable conduct. The New York interest in punishing a wrongdoer would not be furthered here because this defendant has not been found possessed of evil or reprehensible motives. The New York interest in providing a wholesome example would not be furthered here when all of the acts that would warrant punitive damages were restricted to Louisiana. Finally, even if we were to assume that New York has the stronger interest in the issue of punitive damages, they should not have been found here. Under our law, to hold an employer liable in punitive damages for the willful or wanton acts of an employee, it must be shown that the employer somehow participated in the reprehensible conduct or that he ratified the wrongdoing *(Davey v D & Z Foods,* 21 AD2d 860; *Cohen v Varig Airlines,* 85 Misc 2d 653, mod on other grounds 88 Misc 2d 998, mod on other grounds 62 AD2d 324).

■ We conclude that Louisiana law is applicable to the issue of punitive damages and that under that law they cannot be recovered here.

The next issue is referable to the negligence cause of action. In such actions New York has abandoned contributory negligence and assumption of risk for a form of comparative negligence (CPLR art 14-A), the purpose of which is to ameliorate the harsh result when a plaintiff is slightly negligent and fairly to apportion damages among the parties *(Abbate v Big V Supermarkets,* 95 Misc 2d 483, 485; Prosser, Law of Torts, 4th ed, § 67). Louisiana adheres to contributory negligence and assumption of risk (La Code Civ Pro, art 1005; *Bass v Aetna Ins. Co.,* 370 So 2d 511 [La]), expressing the policy that no one is ever absolved from exercising reasonable and necessary care for his own safety *(Normand v Piazza,* 145 So 2d 110, 113).

■■ Examining the contacts of the respective jurisdictions *(Matter of Crichton,* 20 NY2d 124, *supra),* we find the only relevant one to be the domicile of the plaintiff. Thus, although New York might have an interest in having its comparative negligence law applied to protect a New York plaintiff, it has no interest in protecting a Louisiana plaintiff. Louisiana, however, does have an interest in having a Louisiana plaintiff conform to the standard of care imposed by its contributory negligence and assumption of risk laws. Louisiana is, then, the jurisdiction with the greater concern with this issue and its law should have been applied.

Under Louisiana law the plaintiff would have been barred from recovery on the negligence cause of action by his own acknowledged conduct. It is an established principle of the law of that State that voluntary intoxication cannot relieve an individual of responsibility for his own conduct *(Barlow v City of New Orleans,* 228 So 2d 47 [La]). "A voluntarily intoxicated person is bound to exercise the same degree of care for his own safety as is a sober person. If he places himself in a position of peril as a result of his intoxication and is injured, he is generally held to be guilty of negligence which is a bar to his recovery" *(Pence v Ketchum,* 314 So 2d 550, 552; see, also, *Lee v Peerless Ins. Co.,* 175 So 2d 381 [La]). Since the plaintiff stresses that, due to his own intoxication, he did not know what was going on, he must be held guilty of contributory negligence as a matter of law, and be barred from recovery for any negligence on the defendant's part.

■ The question is presented whether the Statute of Limitations to be applied to the churning cause of action—it is the only cause of action now remaining as a basis of the jury verdict—should be that of Louisiana or New York. Under

CPLR 202, when a cause of action accrues outside of New York in favor of a nonresident, the court must compare the New York statute with that of the place of accrual and apply the shorter. The plaintiff contends that this borrowing statute, CPLR 202, is inapplicable for the reason that the cause of action accrued in New York.

In *Sack v Low* (478 F2d 360, 366) the court ruled that under New York law a cause of action in a securities suit accrued where the plaintiffs suffered loss and that this would be "where they lived and conducted their investment activities". This holding jibes with a recent Court of Appeals decision that causes of action in negligence and strict products liability accrue in the place of injury *(Martin v Dierck Equip. Co.,* 43 NY2d 583). By this reasoning the borrowing statute must be applied as the churning and its resultant loss would have occurred in Louisiana.

When we borrow the shorter one-year Louisiana statute, we must, however, take it "fully encumbered with all the foreign state's rules as to tolls, disabilities, etc. The question is not simply how long is the foreign statute of limitations, but rather, is the action barred by the law of the foreign state" (Professor McLaughlin's Practice Commentary to McKinney's Cons Laws of NY, CPLR 202, par C202:3, citing *Isenberg v Rainier,* 145 App Div 256). In Louisiana, prescription (the name given there for the defense of the Statute of Limitations) is governed by the law of the place where the action is brought *(Kirby Lbr. Co. v Hicks Co.,* 144 La 473; see, also, Martindale-Hubbell's Louisiana Law Digest, p 1031). Thus, by a circuitous route the time expressed in the New York statute becomes controlling and the churning action would not be time barred.

■ Upon the trial the defendant did not appear to have contended, nor did it prove, that the substantive law of Louisiana respecting a churning cause of action is different from the New York law. (See 8 NY Jur, Conflict of Laws, § 8.) In the absence of this proof we may assume that it is the same *(International Text Book Co. v Connelly,* 206 NY 188, 201), or, at least, that the defendant has acquiesced in the application of the law of the forum *(Watts v Swiss Bank Corp.,* 27 NY2d 270, 276).

■■ Notwithstanding uncontested application of New York law to the churning cause of action, it must be remanded for a new trial. First, since the jury reported only a general verdict

of $45,000 compensatory damages covering the negligence and the churning causes of action, we have no way of knowing the damages attributed to the latter. Second, the record indicates that the jury may have been confused on the issue of fraud. It was charged on a cause of action for fraudulent inducement to trade in commodities. The separate churning cause of action had intent to defraud as one element charged. The jury stated without elaboration that it found no fraud. If it was referring to the fraudulent inducement cause of action only, it could validly find churning. If it was referring to the intent to defraud necessary to the churning cause of action, its finding of churning would be inconsistent.

Accordingly, the judgment of the Supreme Court, New York County (NADEL, J.), entered on June 13, 1979, awarding plaintiff $45,000 in compensatory damages and $30,000 in punitive damages should be reversed, on the law, and a new trial ordered with respect to the cause of action for churning, without costs and without disbursements.

MURPHY, P. J. (concurring). I agree with Justice LYNCH that, under Louisiana law, the negligence cause of action is barred by plaintiff's contributory negligence. To the extent that the verdict was premised upon the negligence cause, it was erroneous. Furthermore, the submission of the negligence cause may have confused the jury and prevented a fair consideration of the "churning" cause. Even if that negligence cause were governed by New York law, the trial court erred in refusing to charge on the issue of contributory negligence. That issue was relevant, if for no other reason, in calculating damages under New York's rule of comparative negligence.

I also agree with Justice LYNCH that the contract cause is governed by New York law and that the defendant acquiesced in the application of New York law to the "churning" cause. I would further find that the defendant acquiesced in the application of New York law to the fraud cause. Thus, the remaining three causes will be explored under New York law.

With regard to the contract cause, the record indicates that the plaintiff had a nondiscretionary account with the defendant. There is no dispute concerning the fact that all transactions were submitted to the plaintiff for his approval and that he did approve all transactions. Hence, the evidence does not disclose any patent breach of the contract by the defendant. For this reason, the contract cause should have been dismissed as a matter of law.

In charging breach of contract, the trial court also permitted the jury to find that the defendant had violated the "suitability" rule of the National Association of Securities Dealers (NASD). There was conflicting evidence in the record as to the date on which the plaintiff signed a "suitability letter" with the defendant. Even if that "suitability letter" was signed by the plaintiff after the subject account was opened with the defendant, the trial court should not have charged the "suitability" rule of the NASD. The plaintiff has not shown that commodities trading is controlled by any "suitability" rule or regulation of (i) the Commodity Futures Trading Commission, (ii) the NASD, or (iii) the national stock exchanges. This "suitability" charge may have further confused the jury and is an additional ground for reversal.

The trial court submitted this case to the jury on the additional theory of "common-law fraud". Conceptually, a party may seek to recover on the bases of both "common-law fraud" and "churning". (Cf. *Van Alen v Dominick & Dominick,* 441 F Supp 389, affd 560 F2d 547.) However, in order to recover for fraud, the plaintiff must show, *inter alia,* that the defendant misrepresented a material fact. The plaintiff did not demonstrate that the defendant misrepresented any of the transactions approved by him. Consequently, common-law fraud was not the proper vehicle for recovery on the facts in this case. The jury correctly rejected that cause in its verdict.

The fourth cause submitted to the jury was "churning". This cause has been defined as follows *(Newburger, Loeb & Co., v Gross,* 563 F2d 1057, 1069, 1070, cert den 434 US 1035): " 'Churning' occurs when a securities dealer abuses his customer's confidence for personal gain (e.g. to create commissions) by inducing transactions in the customer's account which are disproportionate to the size and character of the account. Churning has been held to be a deceptive device within § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, for which a private cause of action for damages will lie. See, e.g., *Ruskay v. Waddell,* 552 F.2d 392, 393 n. 2 (2d Cir. 1977); *Carras v. Burns,* 516 F.2d 251, 258 (4th Cir. 1975); *Landry v. Hemphill, Noyes & Co.,* 473 F.2d 365, 368 n. 1 (1st Cir.), cert. denied, 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Hecht v. Harris, Upham & Co.,* 430 F.2d 1202, 1206-07 (9th Cir. 1970); *Powers v. Francis I. DuPont & Company,* 344 F.Supp. 429, 431 (E.D.Pa. 1972); *Moscarelli v. Stamm,* 288 F.Supp. 453, 457 (E.D.N.Y. 1968); see generally Note, Churn-

ing by Securities Dealers, 80 Harv.L.Rev. 869 (1967). In order to recover, the customer must show that the dealer effectively exercised control over trading in the account and manipulated the account to his benefit. Where, as here, the account is non-discretionary (i.e., the dealer may not make trades in the account, without the customer's authorization), the plaintiff must show that he relied extensively on his broker's advice and that the broker abused the plaintiff's trust. Thus, if a customer is fully able to evaluate his broker's advice and agrees with the broker's suggestions, the customer retains control of the account. See *Carras v. Burns, supra,* 516 F.2d at 258-59."

In most instances, a party will attempt to recover for "churning" in the Federal court system (see, e.g., *Newburger, Loeb & Co. v Gross, supra).* However, a party may also seek to recover damages for "churning" in the State systems. In an action brought in the State system, a party cannot recover for any violation of the Securities Exchange Act or the regulations promulgated thereunder. *(Pierce v Ellis & Co.,* 62 Misc 2d 771, 773; *McCollum v Billings,* 53 Misc 2d 661.) Nonetheless, he may seek to show that there has been a breach of a fiduciary relationship constituting constructive fraud. (Cf. *Twomey v Mitchum, Jones & Templeton,* 262 Cal App 2d 690, 712-713.) The charge in this proceeding should have been limited to the thrust of plaintiff's proof, viz., "churning". In passing, it should be observed that the defendant does not maintain that the "churning" cause is time barred nor does the evidence otherwise establish that fact. (See CPLR 203, subd [f]; 213, subds 1, 8.)

In cases where it has been held that a stockbroker or dealer engaged a customer's securities account in excessive trading, one factor considered has been the broker's or dealer's control over the customer's account. Although such control is established by the existence of a formally contractual discretionary account, sufficient control has been established by the nature of the relationship between the parties, often combined with a lack of financial or investment sophistication on the part of the customer. (Stockbroker—"Churning"—Liability, Ann. 32 ALR3d 635, 640.) The plaintiff testified at trial that, during the entire period the subject account was open with the defendant, he was never sober. He maintained that, by reason of his alcoholism, he was so incompetent that he could not give meaningful approval to any of the commodities transac-

tions. Plaintiff further contended that Newman realized that he was incompetent and unfairly took advantage of the situation by excessively trading in the account.

Upon proper proof, an alcoholic has been found incompetent and has been relieved of his contractual responsibilities. (See, generally, 41 Am Jur 2d, Incompetent Persons, §§ 7, 68, 75, 76, 77, 78.) As a theoretical proposition, I am prepared to find that a party's alcoholism could, in a particular case, shift effective control of an account to a broker and thus permit the broker to churn even a "nondiscretionary" account. However, it is difficult to credit plaintiff's testimony that he did not have one lucid moment while the account was active. Nonetheless, on this appeal, it would be improper to substitute such an evaluation of the evidence for that of the jury. Therefore, upon a retrial, the "churning" cause should be submitted to the jury.

At the new trial, compensatory damages should be calculated on a "quasi-contractual" theory. (Stevens v Abbott, Proctor & Paine, 288 F Supp 836, 849-851; see, generally, Stockbroker—"Churning"—Liability, Ann. 32 ALR3d 635, 648 et seq.) Under that theory, plaintiff would be able to recover commissions, taxes, transfer charges and miscellaneous expenses flowing from the excessive trading (Carras v Burns, 516 F2d 251, 259). He would not be permitted to recover the speculative damages permitted under the "out-of-pocket" or "loss-of-bargain" theories.

Under proper circumstances, New York law would permit punitive damages with regard to the "churning" cause. Nonetheless, there is no indication in the record that the defendant's alleged wrong was aimed at the general public. (Newburger, Loeb & Co. v Gross, 563 F2d 1057, 1080, cert den 434 US 1035.) Therefore, I would not permit the plaintiff to recover punitive damages at the new trial. Parenthetically, I note that, if this case had been tried in the Federal court system on the theory that Federal law had been breached, punitive damages could not have been recovered (Carras v Burns, supra, at p 259). Thus, I see no reason for allowing punitive damages in an action brought in the State court system.

Summarizing, the trial court erred in submitting to the jury the causes based upon negligence, contract and fraud. Even if those causes should have been submitted, the court should have charged on contributory negligence and should not have

charged on "suitability". The jury was improperly instructed on the correct measure of compensatory damages and it should not have been allowed to find punitive damages. Accordingly, a new trial should be ordered limited to the cause of action for churning.

Ross and MARKEWICH, JJ., concur with LYNCH, J.; MURPHY, P. J., and KUPFERMAN, J., concur in an opinion by MURPHY, P. J.

Judgment, Supreme Court, New York County, entered on June 13, 1979, reversed, on the law, and vacated, and a new trial directed with respect to the cause of action for churning, without costs and without disbursements.