**PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff,**

v.

**The BOEING COMPANY, Defendant.**

**The BOEING COMPANY, Third Party Plaintiff,**

v.

**SANTINI BROS., INC., National Semiconductor Corporation, Lyon Moving & Storage Company, Burlington Northern Air Freight, Inc., and Allied Chemical Corporation, Third Party Defendants.**

**76 Civ. 5034.**

United States District Court, S. D. New York.

Oct. 24, 1980.

Bigham, Englar, Jones & Houston by James B. McQuillan, New York City, for plaintiff.

Townley & Updike by John C. Sabetta, New York City, for defendant and third party plaintiff.

Condon & Forsyth, New York City, for third party defendant Lyon Moving & Storage Co.

Costello & Shea, New York City, for third party defendant Santini Bros., Inc.

William F. O'Connor, New York City, for third party defendant Allied Chemical Corp.

Hill, Betts & Nash by Daniel K. Read, New York City, for third party defendant National Semiconductor Corp.

Morris, Duffy, Ivone & Jensen, New York City, for third party defendant Burlington Northern Air Freight, Inc.

## MEMORANDUM AND ORDER

OWEN, District Judge.

This negligence action arises out of an airplane crash on November 3, 1973 in Boston, Massachusetts. The owner and operator of the aircraft, Pan American World Airways, Inc. ("Pan Am"), commenced this action against the seller and manufacturer of the aircraft, The Boeing Company ("Boeing"), to recover damages for the loss of the plane. Boeing now moves for summary judgment on the grounds that Pan Am's contributory negligence is an absolute bar to recovery by Pan Am.

The undisputed facts are as follows. The plane crash occurred during a cargo flight from New York to Prestwick, Scotland. The crew was transporting a shipment of nitric acid which Pan Am was responsible for safely accepting, handling, and loading in accordance with federal regulations and procedures established by the International Air Transport Association ("IATA").[1] Shortly after takeoff, the nitric acid ignited, creating heavy smoke in the cargo area which penetrated the cockpit. The crew was forced to divert the flight to Boston where the plane crashed during an emergency landing attempt. The aircraft, a Pan Am Boeing 707–321C, was completely destroyed, and the three crew members on board were killed.

---

1. Nitric acid is a corrosive liquid that causes smoke and/or fire when it combines with flammable materials. Thus, it is classified as a "dangerous article" by the FAA, a "hazardous material" by the ICC, and a "restricted article" by the IATA, and its shipment by air is subject to strict regulation.

Pan Am seeks to recover the value of the aircraft claiming that the accident resulted from Boeing's negligent design, manufacture, and sale of the plane. Pan Am cites, as the specific cause of the crash, Boeing's failure to provide adequate means to exclude hazardous quantities of smoke from the cockpit. Boeing contends that Pan Am was responsible for starting the fire by accepting, handling, and loading the nitric acid in a hazardous manner in violation of specific federal, IATA, and Pan Am regulations. On Boeing's motion for summary judgment, Pan Am's contributory negligence is raised as a complete defense to this action.

The central issue in dispute here is whether New York or Washington law governs the legal effect of Pan Am's contributory negligence. Before reaching that choice-of-law question, however, two threshold matters must be resolved: (1) is there an issue of fact as to Pan Am's negligence, and (2) was Pan Am's negligence a proximate cause of the accident. The first of these issues is easily resolved. Pan Am has effectively conceded its negligence by failing to state in its Statement Pursuant to General Rule 9(g) of the Local Rules of this court ("Rule 9(g) Statement") that the question of negligence presents an issue of fact for the jury. In this connection, Boeing has supplied the court with ample documentation of numerous serious violations by Pan Am of federal, IATA, and Pan Am regulations governing the acceptance, handling, and loading of a hazardous substance such as nitric acid. For example, the nitric acid, a highly corrosive liquid, was accepted by Pan Am for loading without being packaged in fire-safe metal containers cushioned by incombustible material as required by federal regulations, 49 C.F.R. § 173.-268(i), and without being properly marked and labeled to reflect the dangerous nature of the contents. Instead, the glass bottles of nitric acid were packed in boxes stuffed with sawdust which was visibly leaking from some of the boxes. Moreover, no instructions were given as to how the packages should be arranged in the cargo compartment, and none of the boxes were prop-

erly marked "THIS END UP" as required by 49 C.F.R. § 173.25(b)(3). In addition, even though some of the boxes contained directional arrows which provided guidance as to the way in which the containers should be stored, it is undisputed that eight to ten boxes on each pallet were stored on their sides contrary to the directional arrows. ¶¶ 73, 74, Boeing's Statement Pursuant to Rule 9(g). In sum, there is no question that Pan Am failed to exercise that degree of care prescribed by law for transporting nitric acid by air.

Pan Am's Rule 9(g) Statement does claim, however, that a genuine issue of fact exists on the question of whether its negligence was a proximate cause of the accident. The uncontradicted facts in this record, however, do not support this contention. Pan Am admits, and the evidence clearly shows, that the smoke which Pan Am alleges caused the accident originated in the restricted articles of nitric acid which were stowed in the main cabin of the cargo compartment. Pan Am's Memorandum in Opposition to Boeing's Motion for Summary Judgment, at 2–3. It is also undisputed that nitric acid will ignite, creating large quantities of smoke and eventually flames, when combined with a combustible organic material, such as sawdust. Boeing has submitted uncontradicted evidence that the chemical reaction could have occurred with the type of nitric acid and sawdust on board the accident aircraft. In fact, Pan Am representatives have admitted that the most probable cause of the in–flight smoke was the leakage of nitric acid into the sawdust, resulting in a spontaneous chemical reaction of smoke and fire. Depositions of John E. Mycyta at 155 and Wyatt Estep at 97, 101, 165. Furthermore, Pan Am offers no alternative explanation, either factual or hypothetical, for the fire and smoke aboard the aircraft.

Notwithstanding the overwhelming uncontradicted evidence as to the source of the smoke, Pan Am contends that its conduct was not a proximate cause of the accident. Pan Am argues that even if its negligence caused the smoke, it was only

through Boeing's negligent design of the aircraft that the smoke was able to penetrate the cockpit and disable the crew from safely landing the plane. This argument incorrectly assumes that there may only be a single proximate cause of any injury. *See* W. Prosser, The Law of Torts, § 41 at 239 (4th ed. 1971). Even if Boeing, by the exercise of due care, could have prevented the smoke from entering the cockpit, Pan Am's responsibility for creating the fire in the first instance was certainly "a material element and substantial factor" contributing to the accident. *Id.* at 240. Given the fact that Pan Am virtually concedes that its negligence caused the fire which incapacitated the crew, plaintiff has failed to demonstrate that there is a genuine issue of fact as to whether its negligence was a proximate cause of the defendant's loss.

Turning to the choice of law issue, the parties disagree as to which state's law, Washington or New York, is controlling as to the legal effect of Pan Am's contributory negligence.[2] At the time of the accident, Washington had a comparative negligence rule whereas New York law provided that a plaintiff's contributory negligence was a complete defense to its own action in negligence.[3] By its rule, New York precluded a negligence action by one who failed to exercise reasonable and necessary care for his own safety.

Where jurisdiction of a federal action is predicated on diversity of citizenship, conflict of law questions must be resolved by application of the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, New York's choice of law rules must be applied in this case. In multi–state torts, New York courts follow the law of the jurisdiction with the greatest interest in having its law applied to the specific issue (or issues) raised in the litigation. *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). This determination is made by an examination of the contacts which each state, here New York and Washington, has with the controversy. More specifically,

... it is necessary first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.

*Dym v. Gordon*, 16 N.Y.2d 120, 124, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965), *quoted in In re Estate of Crichton*, 20 N.Y.2d 124, 133, 281 N.Y.S.2d 811, 228 N.E.2d 799 (1967), and *Knieriemen v. Bache Halsey Stuart Shields, Inc.*, 74 A.D.2d 290, 427 N.Y. S.2d 10, 13 (1980). Under this analysis, the laws of different states may apply to different issues in the case. As the court stated in *Babcock v. Jackson*, 12 N.Y.2d 473, 484, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (emphasis supplied):

[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of *other issues must turn*, as does the issue of the standard of conduct itself, *on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.*

*Accord, Franklin v. Nelson Freightways, Inc.*, 408 F.Supp. 670 (E.D.N.Y. 1976).

---

**2.** The only other state whose law might possibly be applicable is Massachusetts where the plane eventually crashed. Both parties agree, and the case law supports their understanding, that the fortuitous situs of the accident is an insufficient basis for applying the law of that forum. *See Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978).

**3.** In 1975, New York replaced contributory negligence with a form of comparative negligence permitting plaintiffs who are contributorily negligent to receive proportionately diminished recoveries. N.Y.Civ.Prac. Law § 1411 (McKinney).

Thus, it is entirely appropriate, for example, to apply Washington law to issues pertaining to *Boeing's* negligence and to have New York law govern the legal effect of *Pan Am's* contributory negligence.

■ An examination of the contacts which New York and Washington have with this controversy reveals that New York has a paramount interest in having its laws governing negligence apply to the conduct of Pan Am herein. Washington's contacts with this dispute relate exclusively to Boeing's activities. Boeing designed and manufactured the aircraft, the loss of which occasioned this lawsuit in Washington, which state is Boeing's principal place of business. New York, on the other hand, where Pan Am is incorporated and has its headquarters, is the situs of all of the significant events pertaining to Pan Am's concededly negligent acceptance, handling, and loading of the restricted cargo of nitric acid. In addition, the Pan Am personnel responsible for handling the cargo were supervised and trained in New York, and it is of consequence that New York is the jurisdiction in which Pan Am has chosen to bring this action.

The alignment of contacts recited above therefore compels the application of New York law. While Washington may have an interest in having its law apply to govern the conduct of its own residents in Washington, it has no interest in setting standards of care for a New Yorker's activities in New York. New York, on the other hand, has a significant interest in having a New York plaintiff suing in this forum conform to its standards of care and negligence rules. This is especially true where the contributory negligence of a New York plaintiff occurred in this state.

This court's analysis follows that adopted in two recent New York state cases. In *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978), the New York Court of Appeals applied New York's contributory negligence rule to bar a products liability action for personal injuries. The action was brought by a New York plaintiff against defendants from other states which had adopted comparative negligence rules. The plaintiff in *Cousins* was the pilot of a plane leased in New York which crashed in Pennsylvania. He sued the lessor of the plane, a closely held New Jersey corporation, and the manufacturer of the plane, headquartered in Pennsylvania.[4] The Appellate Division held that New York had a greater interest than Pennsylvania in determining the legal effect of the plaintiff's contributory negligence. In affirming the judgment for the defendant, the Appellate Division stated:

It is too clear to dispute that New York State has a more significant relationship to the occurrence and to the parties than has the State of Pennsylvania. The only contact this case has with Pennsylvania is the fact it is the state of incorporation of one of the defendants and is the state in which the airplane fortuitously crash-landed. New York, on the other hand, appears to be the center of gravity of significant contacts. Plaintiff resides in New York, he is employed in New York, the flight was in connection with business of plaintiff's New York law firm, New York State is the place where the rental agreement for the plane was entered into, where the flight originated, and was the return destination of the airplane. Finally, New York State is where the plaintiff's cause of action was commenced. On the basis of the many foregoing elements, this court is satisfied that New York law properly governed the elements of and the defenses to plaintiff's strict liability cause of action.

*Cousins v. Instrument Flyers, Inc.*, 58 A.D.2d 336, 396 N.Y.S.2d 655, 656 (1977). This reasoning was approved by the Court of Appeals which affirmed. In addition to the significant New York contacts cited by the Appellate Division, the Court of Appeals also noted that "[p]laintiff chose to sue in New York," that "[p]laintiff's apparent contributory negligence probably began when he was in New York," and that the situs of the crash in Pennsylvania was "for-

---

4. The aircraft was built in Florida which also had a comparative negligence rule.

tuitous." *Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d at 699–700, 405 N.Y.S.2d 441, 376 N.E.2d 914. Thus, the Court of Appeals concluded that

> ... it was not error for the trial Justice to apply New York law, not only the law of the forum, but the law applicable to significant events in this multi–state trip by air, in the absence of compelling reason to apply belatedly another law, whether on the doctrine of *lex loci delicti* or otherwise.

*Id.* at 700, 405 N.Y.S.2d 441, 376 N.E.2d 914.

The same rationale was applied in *Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 A.D.2d 290, 427 N.Y.S.2d 10 (App.Div. 1980) to dismiss a negligence suit against a New York brokerage firm by a Louisiana customer. When the plaintiff's cause of action arose in that case, New York had abandoned its rigid contributory negligence doctrine in favor of a forum of comparative negligence. However, Louisiana retained the traditional contributory negligence rule. The Appellate Division held that Louisiana and not New York had the paramount interest in having its law govern the standard of care of its own residents. The court reasoned as follows:

> Examining the contacts of the respective jurisdictions (*Matter of Crichton, supra*), we find the only relevant one to be the domicile of the plaintiff. Thus, although New York might have an interest in having its comparative negligence law applied to protect a New York plaintiff, it has no interest in protecting a Louisiana plaintiff. Louisiana, however, does have an interest in having a Louisiana plaintiff conform to the standard of care imposed by its contributory negligence and assumption of the risk laws. Louisiana is, then, the jurisdiction with the greater concern with this issue, and its law should have been applied.

*Id.* at 14. The arguments favoring the application of New York law in this case are even stronger than in *Knieriemen,* since New York is not only Pan Am's domicile, but the place where its contributory negligence occurred.

 Given the foregoing, there being no genuine dispute that Pan Am was contributorily negligent and that its negligence was a proximate cause of the accident, and the application of New York law to those facts being required, dismissal of the action necessarily follows. Defendant Boeing's motion for summary judgment is accordingly granted.