ABLE CYCLE ENGINES, INC., Doing Business as ACE DISTRIBUTORS, INC., et al., Appellants, v ALLSTATE INSURANCE COMPANY, Respondent, et al., Defendants.

Second Department, December 28, 1981

#### APPEARANCES OF COUNSEL

*Richard J. O'Keeffe* for appellant.

*Mead, Dore & Vouté, P.C. (Donald A. Mead* of counsel; *Emanuel Thebner* on the brief), for respondent.

#### OPINION OF THE COURT

WEINSTEIN, J.

May evidence that a witness committed a crime in a State other than New York be introduced at a trial in a New York State court for the purpose of impeaching the witness' credibility if, under the law of the State where the crime was committed, such crime could not be used for impeachment purposes? We hold that, assuming such evidence is otherwise admissible, it may be so introduced.

Plaintiff Able Cycle Engines, Inc., was engaged in the manufacture and sale of motorcycle parts. The business was conducted from a one-story building in northern Westchester County. At all relevant times, this structure was

covered by a "Business Insurance" policy issued by defendant Allstate Insurance Company.

Early in the morning of August 5, 1973, a fire destroyed the aforesaid plaintiff's premises. Paul Carrera, an officer of Able Cycle, was seen just outside the premises as the fire was blazing, although he told a State trooper present at the scene that he had not noticed the fire until a passing motorist pointed it out to him. Suspecting that the fire may have resulted from an act of arson, the State police requested that the District Attorney investigate the possibility of criminal activity. Accordingly, a criminal investigator from the District Attorney's office attempted to inspect the premises. His efforts, however, were repeatedly thwarted by Frederick Greenwood, who actually operated Able Cycle. On at least four occasions, Greenwood or his wife refused to allow the investigator to enter the premises; on two other occasions, the investigator could not locate Greenwood there. Finally, the case was closed due to lack of co-operation by Greenwood.

Greenwood filed an insurance claim with Allstate. A fire protection consultant was hired by Allstate to investigate the premises, and he succeeded in making an inspection. He concluded that two separate fires, one in the back and one in the front of the building, had started at about the same time, and had each progressed toward the middle of the structure. It was his opinion that the fires were deliberately set in order to destroy the building. Based on his opinion, Allstate notified Greenwood that it would deny his claim for insurance benefits.

The instant action was thereupon commenced to collect insurance proceeds allegedly due under the policy. Greenwood was the only witness called by Able Cycle during its direct case; Carrera had died in an automobile accident shortly after the fire. At trial, Greenwood admitted, in the course of cross-examination, that in April, 1974, he was convicted in California of the crime of grand theft, arising out of an insurance fraud. At the conclusion of the trial, the jury found that the fire at the premises of Able Cycle had been deliberately set, and returned a verdict in favor of defendant Allstate. The plaintiffs now appeal.

The crux of this appeal is whether the court erred in permitting Greenwood's testimony to be impeached by the introduction of evidence of his California conviction. This issue is complicated by the fact that the law of New York and that of California are at odds on this point. Greenwood received a sentence of probation for his California crime. Section 1203.4 of the Penal Code of California provides a mechanism whereby any defendant who has fulfilled all the conditions of probation for the entire period of probation, or who was discharged from probation prior to the termination of that period, can have his conviction vacated, the charges against him retroactively dismissed, and "thereafter be released from all penalties and disabilities resulting from the offense of which he has been convicted", with certain exceptions not relevant here. Greenwood's conviction of grand theft was, in fact, vacated. Subdivision (c) of section 788 of California's Evidence Code provides that a prior felony may not be used to attack the credibility of a witness if "[t]he accusatory pleading against the witness has been dismissed under the provisions of Penal Code Section 1203.4". A California court has explained that "the legislature intended by the enactment of section 1203 that no convicted person discharged after probation thenceforth should be regarded as one possessed of the degree of turpitude likely to affect his credibility as a witness" *(People v Mackey,* 58 Cal App 123, 131). This is so even if the witness cannot demonstrate that he has been rehabilitated subsequent to the period of probation (see *People v Butler,* 105 Cal App 3d 585); indeed, the statute applies even when it is manifest that rehabilitation has, in fact, not taken place (see *People v Bradley,* 248 Cal App 2d 887; *People v Johnson,* 134 Cal App 2d 140).[*]

Under California law, then, evidence of Greenwood's conviction of grand theft would not have been admissible. It appears that the law of New York is contrary. Pursuant to CPLR 4513, any conviction of a crime may be introduced to impeach the credibility of a witness at a civil trial (see Richardson, Evidence [Prince, 10th ed], § 506; Fisch, New

---

[*] The law of New York, with respect to an offender who has obtained a similar certificate of relief from disabilities, is otherwise (see Correction Law, § 702, subd 2, par [b]).

York Evidence [2d ed], § 459; 65 NY Jur, Witnesses, § 78). In fact, inquiry into even the nature of the crime, and not just the fact of the conviction itself, is proper (see *Moore v Leventhal,* 303 NY 534; *People v Sorge,* 301 NY 198). There are no exceptions for a crime for which a certificate of relief from disabilities has been obtained.

The fact that the statute does not explicitly limit prior-crime impeachment to crimes for which no certificate of relief from disabilities has been obtained does not, however, terminate our inquiry as to the law of New York on this point. Article 23 of the Correction Law (§ 700 *et seq.)* provides for the granting, under appropriate circumstances, of a certificate relieving an eligible offender "of any forfeiture or disability * * * automatically imposed by law by reason of his conviction" (Correction Law, § 701, subd 1). We could treat the certificate contemplated by this article as roughly equivalent to the relief granted to Greenwood in California. We would thus be confronted by the possibility that the statute could be construed to include relief from the "disability" of having all testimony offered by the offender rendered liable to prior-crime impeachment as to the crime in question. We are aware of no case in New York which has dealt with this possibility.

An extremely narrow interpretation of the privileges bestowed by a certificate granted under article 23 of the Correction Law was rendered in *People v Honeckman* (87 Misc 2d 117). The court read subdivision 2 of section 701 of the Correction Law to be a clarification of the terms of subdivision 1 of that section, so that only certain privileges specified in subdivision 2, none dealing with impeachment of the offender's testimony, could be conferred by the certificate. We are not certain that such restrictive reading of the statute is appropriate; we certainly do not believe that it reflects its plain meaning. Subdivision 2 appears to be a nonexhaustive listing of privileges which may be granted by the certificate.

Nonetheless, we believe that the *Honeckman* court was correct insofar as it held that the certificate did not expunge the conviction for all purposes. Subdivision 3 of section 701 of the Correction Law, for instance, specifies that a licensing board can, at its discretion, suspend,

revoke, or refuse to issue a license to an offender on the basis of his prior offense, even though a certificate has been issued (see *Matter of Sturman v Public Health Council,* 58 AD2d 389). Subdivision 1 specifies that a certificate does not remove the bar to an offender's holding public office (cf. *Matter of De Paolo v Bronstein,* 45 AD2d 691). In other words, "[t]he granting of a certificate of relief from disabilities in no way eradicates or expunges the underlying conviction" *(Matter of Da Grossa v Goodman,* 72 Misc 2d 806, 809). This statement was cited as the law of this State in *Rehman v Immigration & Naturalization Serv.* (544 F2d 71, 74) and *Nass v Local 348, Warehouse Prod., Sales & Servs. Employees Union* (503 F Supp 217, 218). Even more persuasive is *United States v DiNapoli* (557 F2d 962, 966, cert den 434 US 858), which also cited *Da Grossa.* In *DiNapoli,* impeachment of testimony by a prior crime was held permissible even though a certificate of relief from disabilities had been obtained. That holding, it is true, was based upon subdivision (c) of rule 609 of the Federal Rules of Evidence (in US Code, tit 28, Appendix), which renders a prior conviction inadmissible for impeachment purposes if a certificate of rehabilitation has been obtained "based on a finding of the rehabilitation of the person convicted"; the court in *DiNapoli* noted that rehabilitation need not have been accomplished in order for the offender to be granted a certificate (but see Correction Law, § 702, subd 2, par [b], and n, *supra).*

*DiNapoli (supra),* being based on Federal law, is of course not direct authority for the issue at bar. But we believe that the result it reached would be correct under State law also. We can glean from the provisions of section 701 of the Correction Law that the intent of the Legislature in enacting it was to enable eligible offenders who have shown certain indications of having been rehabilitated to avoid some of the restrictions immediately flowing from their convictions, such as the bar against holding certain civil service positions and the loss of the right to vote (see Governor's Memorandum, NY Legis Ann, 1966, p 349). The Legislature evidently did not intend that all indirect consequences of the conviction, such as susceptibility to impeachment of testimony, be eradicated. We

believe it to be significant that the New York Proposed Code of Evidence, which closely parallels the Federal Rules of Evidence, omits all of subdivision (c) of rule 609 of the Federal Rules except that part dealing with a crime for which an actual pardon has been granted (see Proposed Code of Evidence for State of New York, § 609, subd [d]); the historical note to section 609 of the Proposed Code indicates that this change was made "to reflect local substantive law and procedure". It is therefore our view that a certificate of relief from disabilities, since it clearly does not eradicate the underlying conviction, also does not render that conviction inadmissible for impeachment purposes.

We hold, then, that Greenwood's California conviction was admissible under New York law, for impeachment purposes. It was inadmissible under the law of California. The issue thus devolves into one of conflict of laws.

Appellants seek to have us resolve the issue by holding the relief granted to Greenwood in California to be a substantive purging of the crime from his record, and then applying the full faith and credit clause of the Federal Constitution to reach the result that a New York court must regard the California conviction as totally expunged. But we cannot concur with appellants on this point. Relief granted pursuant to section 1203.4 of the California Penal Code does not amount to complete expungement (see *People v Weidersperg,* 44 Cal App 3d 550; *Meyer v Superior Ct. of Sacramento County,* 247 Cal App 2d 133). Even a pardon does not completely obliterate a conviction (see *People v Norton,* 80 Cal App 3d Supp 14). The statute itself provides that a person who has obtained relief pursuant to section 1203.4 may not possess a concealed firearm, must disclose the conviction when applying for public office or for a license, and is liable to have the vacated felony proved during the course of any subsequent prosecution against him (indeed, subdivision [c] of section 788 of the California Evidence Code explicitly excludes from its scope a subsequent criminal prosecution against the offender). In other words, although certain substantive and procedural benefits are bestowed on an offender who takes advantage of section 1203.4, we cannot say that under California law,

the conviction is substantively totally erased from the offender's legal biography. We consider it a procedural device whereby Greenwood was relieved of certain disabilities. With this in mind, our analysis may now proceed along traditional conflict of laws lines.

The United States Supreme Court has held that, when a conflict involving various State statutes arises, "the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight" (*Alaska Packers Assn. v Commission,* 294 US 532, 547; see, also, *Hughes v Fetter,* 341 US 609, 611; *Pink v A.A.A. Highway Express,* 314 US 201, 210). Accordingly, when substantive rules of law creating rights or providing defenses are involved, the courts of this State will usually compare the respective contacts with the subject matter of the lawsuit, the parties thereto, and other significant elements of the suit on the part of the jurisdictions involved in order to determine which jurisdiction is the "center of gravity" of the lawsuit, so that its laws should apply (see *Babcock v Jackson,* 12 NY2d 473; *Macey v Rozbicki,* 18 NY2d 289; *Auten v Auten,* 308 NY 155; *Rubin v Irving Trust Co.,* 305 NY 288; *Industrial Credit Co. v J.A.D. Constr. Corp.,* 29 AD2d 952; *Cousins v Instrument Flyers,* 58 AD2d 336). On occasion, the laws of the jurisdiction with the greatest governmental interest in seeing its laws applied to the action in question will be applied (see *Tooker v Lopez,* 24 NY2d 569; *Neumeier v Kuehner,* 31 NY2d 121). But this is only so when substantive matters are at issue. With respect to matters of procedural law, it is the law of the forum that is invariably applied, regardless of the "center of gravity" or governmental interest in question (see *Mertz v Mertz,* 271 NY 466; *Kilberg v Northeast Airlines,* 9 NY2d 34). Perhaps this is because the forum jurisdiction is deemed, by definition, to have a compelling governmental interest in applying its own procedural principles, in order to assure orderly and uniform practice in its courts. Perhaps it is because, although it might be presumed that the parties conducted themselves with the

substantive rules of the "center of gravity" jurisdiction in mind, it cannot be assumed that they directed their attention to the procedural rules of any particular jurisdiction. Whatever the reason, the general rule with respect to procedural matters applies in particular to questions of admissibility of evidence. "Matters respecting the remedy, such as the bringing of suits, *admissibility of evidence,* statutes of limitation, are governed by the *lex fori* and depend upon the law of the place where the suit is brought" *(United States Mtge. & Trust Co. v Ruggles,* 258 NY 32, 40; emphasis supplied; see, also, *Hixson v Rodbourn,* 67 App Div 424; 16 Am Jur 2d, Conflict of Laws, § 131; 8 NY Jur, Conflict of Laws, §§ 28, 34; Restatement, Conflict of Laws 2d, § 137). Indeed, it has been said that "[t]he rule that admissibility of evidence is to be governed by the law of the forum is so obviously necessary to an efficient disposition of the business of the court that cases in which counsel have seriously contended that any other rule should be adopted are exceedingly rare" (3 Beale, The Conflict of Laws, § 597.1, p 1614).

With this in mind, the resolution of the issue before us is quite clear. Admissibility of impeachment evidence is, of course, an evidentiary question, governed by the law of the forum. It was therefore proper for the trial court to apply the law of New York, which would permit evidence of Greenwood's California crime to be admitted.

We have found appellants' other arguments to be devoid of merit. Accordingly, the judgment should be affirmed insofar as appealed from.

MOLLEN, P. J., HOPKINS and TITONE, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered January 7, 1980, affirmed insofar as appealed from, with costs.