NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1512-12T1

IN THE MATTER OF THE DENIAL
OF THE APPLICATION BY
GEORGE WINSTON, JR., FOR A
FIREARMS PURCHASER IDENTIFICATION
CARD.

APPROVED FOR PUBLICATION

October 31, 2014

APPELLATE DIVISION

_____

Submitted January 29, 2014 — Decided October 31, 2014

Before Judges Grall, Waugh and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Passaic County, Municipal
Appeal No. 11-061.

Evan F. Nappen, attorney for appellant
George Winston, Jr. (Richard V. Gilbert, on
the brief).

Camelia M. Valdes, Passaic County
Prosecutor, attorney for respondent State of
New Jersey (Robert J. Wisse, Assistant
Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The question presented by this appeal is whether the Full Faith and Credit Clause of the United States Constitution requires New Jersey to treat appellant George Winston's New York criminal convictions, for which he has obtained certificates of relief from disabilities, as not disqualifying him from

obtaining a firearms purchaser identification card or a permit to purchase a handgun under N.J.S.A. 2C:58-3c(1). Because we conclude that the Constitution does not compel that result, we affirm the denial of those firearms permits to Winston.

Winston was convicted in New York in 1974 of attempted assault in the second degree, an offense carrying a penalty of up to four years' imprisonment. N.Y. Penal Law §§ 120.05; 110.05; 70.00 (McKinney 2008). He was convicted in 1989 of criminal possession of a controlled substance in the seventh degree, a class A misdemeanor carrying a maximum penalty of one year's imprisonment. N.Y. Penal Law §§ 220.03; 70.15 (McKinney 2008). In 2011, he obtained certificates of relief for both convictions from courts in New York. Each certificate bears the following legend:

> This certificate is issued to the holder to grant relief from all or certain enumerated disabilities, forfeitures, or bars to his employment automatically imposed by law by reason of his conviction of the crime or of the offense specified herein.
>
> This certificate shall NOT be deemed nor construed to be a pardon.

Each certificate further provides that it "relieve[s] the holder of all disabilities and bars to employment, excluding the right to be eligible for public office." Each also notes that the "certificate shall be considered permanent."

After obtaining the certificates, Winston submitted an application to the Chief of Police in Clifton for a firearms purchaser identification card and a handgun purchase permit. In response to questions nineteen and twenty on the application form, which ask whether one has ever been convicted in New Jersey or elsewhere of any crime or misdemeanor "that has not been expunged or sealed," Winston disclosed his New York convictions and his attendant certificates of relief. Following investigation, the Chief denied Winston's application on account of his criminal record and advised Winston of his right to appeal.

Winston filed a timely appeal and the Law Division judge held a hearing at which the detective responsible for reviewing Winston's application appeared. The detective testified that Winston's background check revealed not only the two New York convictions but also instances of domestic violence, one of which resulted in a temporary restraining order in late 2005, a twenty-year old conviction for driving under the influence, and some "neighbor disputes," from 2007 to 2009, culminating in cross-complaints that were ultimately mediated and dismissed. The detective testified that following the background check,

Winston's application was denied on the basis of his criminal record.[1]

After hearing the testimony and the arguments of counsel, the judge announced her decision, later amplified in a written statement of reasons, finding that the New York certificates are not the equivalent of an expungement under New Jersey law and thus "the two prior New York state convictions bar [Winston] from obtaining a firearms purchaser identification card under N.J.S.A. 2C:58-3c(1), which states that said card shall not be issued to anyone who has been convicted of any crime."

On appeal, Winston renews the argument he made to the Law Division that the Full Faith and Credit Clause forbids New

---

[1] The transcript reveals that counsel for the parties disputed the extent to which Clifton could rely on the domestic violence incident in this proceeding apparently because of a related expungement obtained in New Jersey. After supplemental briefing and a discussion in chambers, the judge asked the prosecutor to "place on the record what the State ultimately is relying on in its denial of [Winston's] application." The prosecutor responded that the State was "relying on the fact that this applicant has two prior convictions in the State of New York, one for [attempted] assault and one for possession of CDS." Accordingly, although the nature and contours of the dispute over Winston's involvement in a domestic violence incident are unclear from the record, what is clear is the State's election to rely solely on the New York convictions in meeting its burden before the Law Division. See Weston v. State, 60 N.J. 36, 46 (1972) (explaining that burden of proof of the existence of good cause for denial of a firearms purchaser identification card at review hearing under prior statute was on the State); In re Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003) (applying Weston to current statute), certif. denied, 179 N.J. 310, (2004).

Jersey from viewing his New York criminal convictions, for which he has received certificates of relief from disabilities, as disqualifying under New Jersey's gun permitting law, N.J.S.A. 2C:58-3.  He also argues that to the extent the judge rested her decision on the "public health, safety or welfare" exception found in N.J.S.A. 2C:58-3c(5), she erred as the State stated expressly that the decision to deny Winston the permits was based solely on his New York convictions, and there is inadequate evidence in the record to support a finding that issuance of the permits to Winston would not be in the interest of the public health, safety or welfare.  Finally, he argues that application of the "public health, safety or welfare" exception violates his rights under the Second Amendment.  We reject those arguments.

Article IV, section 1 of the Constitution provides that "Full Faith and Credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."  The clause applies to matters between states, see, e.g., Sun Oil Co. v. Wortman, 486 U.S. 717, 722-24, 108 S. Ct. 2117, 2122-23, 100 L. Ed. 2d 743, 752-54 (1988), and to matters between a state and the federal

government, see, e.g., Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 81, 104 S. Ct. 892, 896, 79 L. Ed. 2d 56, 61-62 (1984). Although characterizing the command of the clause as "exacting" with respect to "'[a] final judgment . . . rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment,'" the Supreme Court has deemed it "less demanding with respect to choice of laws." Franchise Tax Bd. v. Hyatt, 538 U.S. 488, 494, 123 S. Ct. 1683, 1687, 155 L. Ed. 2d 702, 709 (2003) (quoting Baker v. General Motors Corp., 522 U.S. 222, 233, 118 S. Ct. 657, 663-64, 139 L. Ed. 2d 580, 592 (1998)).

Against that backdrop, we turn to consider New Jersey's permit law, part of the "'careful grid' of regulatory provisions" comprising our firearms law. In re Preis, 118 N.J. 564, 568 (1990) (quoting State v. Ingram, 98 N.J. 489, 495 n.1 (1985)).

In order to lawfully acquire a firearm in New Jersey, one must have first secured a firearms purchaser identification card and, in the case of a handgun, a permit to purchase a handgun. N.J.S.A. 2C:58-3a and b. State v. Cunningham, 186 N.J. Super. 502, 508 (App. Div. 1982). Those permits are not available to a person who has been convicted of a crime. N.J.S.A. 2C:58-3c(1). A 1979 amendment which removed the words "in this State" from

paragraph c(1), leaves no doubt as to the Legislature's intent that a person convicted of a crime in another state is disqualified from gun ownership in this State. See L. 1979, c. 179, §11. Both of Winston's New York convictions qualify as crimes under our law as each carries a sentence in excess of six months. N.J.S.A. 2C:44-4c; State (E.L.) v. G.P.N., 321 N.J. Super. 172, 175-76 (App. Div. 1999). Accordingly, Winston's New York convictions, without consideration of their attendant certificates of relief from disabilities, would disqualify him from obtaining a firearms purchaser identification card or a permit to purchase a handgun under N.J.S.A. 2C:58-3c(1).

The question then is whether the certificates alter that result. For that answer, we turn first to consider the statutes pursuant to which the certificates were issued to understand the purpose and effect of such certificates under New York law. Cf. Ritz v. Motor Vehicle Com'n, 426 N.J. Super. 608, 611 (App. Div. 2012) (considering whether a violation of a South Carolina statute imposing a "civil fine" constitutes a conviction for a drug offense within the intent of N.J.S.A. 39:5-30.13).

The provision of the New York statutes creating the certificates on which Winston relies is not in New York's criminal code but in Article 23 of its Correction Law, entitled "Discretionary Relief from Forfeitures and Disabilities

Automatically Imposed by Law." Section 701, "Certificates of Relief from Disabilities" provides in pertinent part:

> 1. A certificate of relief from disabilities may be granted as provided in this article to relieve an eligible offender of any forfeiture or disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein. Such certificate may be limited to one or more enumerated forfeitures, disabilities or bars, or may relieve the eligible offender of all forfeitures, disabilities and bars. Provided, however, that no such certificate shall apply, or be construed so as to apply to the right of such person to retain or to be eligible for public office.
>
> . . . .
>
> 3. A certificate of relief from disabilities shall not, however, in any way prevent any judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified therein as the basis for the exercise of its discretionary power to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege.[2]
>
> [N.Y. Correct. Law § 701 (McKinney 2014).]

---

[2] Winston's argument that this section does not apply to him based upon the explanation on the reverse of the certificates is meritless. The reverse of the form itself notes that the law is as set forth in Article 23 and that the excerpted portions are summarized for convenience and "are not intended as administrative interpretations and they do not relieve any party of full knowledge of and compliance with the applicable provisions of law."

A-1512-12T1

Section 706 of the statute further provides:

> Nothing contained in this article shall be deemed to alter or limit or affect the manner of applying for pardons to the governor, and no certificate issued hereunder shall be deemed or construed to be a pardon.
>
> [N.Y. Correct. Law § 706 (McKinney 2014).]

The courts of New York have explained "that the intent of the legislature in enacting [the certificate provision] was to enable eligible offenders who have shown certain indications of having been rehabilitated to avoid some of the restrictions immediately flowing from their convictions, such as the bar against holding certain civil service positions and the loss of the right to vote." Able Cycle Engines, Inc. v. Allstate Ins. Co., 445 N.Y.S.2d 469, 473 (N.Y. App. Div. 1981). There is no question but that the certificates relieve Winston from the automatic disqualification his convictions would otherwise pose to his possessing a firearm in New York. See N.Y. Penal Law § 400.00 (McKinney 2008), Matter of Hecht v Bivona, 761 N.Y.S.2d 485, 485 (N.Y. App. Div. 2003).

New York's courts, however, have not found that the legislature intended "that all indirect consequences of the

conviction . . . be eradicated."[3]  <u>Able Cycle Engines</u>, <u>supra</u>, 445

<u>N.Y.S.</u>2d at 473.  Most important for our purposes, those courts

have been explicit in holding "[the] granting of a certificate

of relief from disabilities in no way eradicates or expunges the

underlying conviction."  <u>Id.</u> at 472 (quoting <u>Matter of Da Grossa</u>

<u>v. Goodman</u>, 339 <u>N.Y.S.</u>2d 502, 505 (N.Y. Sup. Ct. 1972)).  New

York's Attorney General agrees.  In an informal opinion

published in 1981, the Attorney General opined that "the

certificate is to be used to mitigate the impact of a criminal

record, not to eliminate it."  1981 N.Y. Op. (Inf.) Att'y Gen.

281, No. 81-124.

A review of these New York authorities plainly establishes

that a New York certificate of relief from disabilities does not

---

[3] New York's highest court has noted that the statute expressly does not preclude a court or authority from relying on the conviction for which a certificate has been obtained in exercising its discretionary function.  <u>Matter of Arrocha v. Bd. of Ed.</u>, 712 <u>N.E.</u>2d 669, 671-73 (N.Y. 1999) (upholding denial of teaching license based on prior felony drug conviction notwithstanding applicant's possession of certificate of relief from disabilities).  Accordingly, even in New York a convicted felon possessing a certificate of relief from disabilities for the conviction can lawfully be denied a gun permit on the basis of the conviction.  <u>See</u> <u>Matter of Caputo v. Kelly</u>, 987 <u>N.Y.S.</u>2d 46, 47 (N.Y. App. Div. 2013) ("Although petitioner's Certificate of Relief from Disabilities removed the automatic bar to licensure occasioned by his prior convictions, it 'did not prevent respondent from relying on the convictions in the exercise of his statutory discretion to deny a [firearm] license for lack of good moral character or good cause.'" (quoting <u>Hines v. Kelly</u>, 635 <u>N.Y.S.</u>2d 31, 32 (N.Y. App. Div. 1985)).

alter or affect the criminal conviction to which it relates. Instead, it merely removes certain disabilities and bars to employment normally attendant to the conviction under New York law. As such, full faith and credit is not implicated in New Jersey's reliance on the existence of the convictions to bar Winston from gun ownership in New Jersey. Cf. People v. Laino, 87 P.3d 27, 37 (Cal. 2004) (holding full faith and credit no bar to California determining under its law whether guilty plea in Arizona resulting in judgment of dismissal constituted prior conviction for purposes of three strikes law).

There is no constitutional requirement that New Jersey deem Winston not disqualified for a permit under its firearms law just because New York has seen fit to do so under its law. The Supreme Court has long held that the Full Faith and Credit Clause "does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state, even though that statute is of controlling force in the courts of the state of its enactment with respect to the same persons and events." Pacific Employers Ins. Co. v. Industrial Accident Comm'n, 306 U.S. 493, 502, 59 S. Ct. 629, 633, 83 L. Ed. 940, 945 (1939). That Winston argues that the certificates remove a disability under

federal firearms law is irrelevant as the federal firearms statutes are not at issue here.[4]

Accordingly, we hold that Winston's New York convictions disqualify him from gun ownership in New Jersey under N.J.S.A. 2C:58-3c(1), notwithstanding his certificates of relief from disabilities for those convictions. The Full Faith and Credit Clause does not require New Jersey to ignore its law that treats such convictions as automatically disqualifying simply because the certificates remove that automatic disqualifier under New York's gun laws.

Winston's remaining arguments require only brief comment. While noting that a decision to deny a permit as not in the interest of public health, safety or welfare under N.J.S.A. 2C:58-3c(5), requires a fact-sensitive analysis, the Law Division judge clearly based her decision on the disqualification presented by Winston's New York convictions under N.J.S.A. 2C:58-3c(1) and not the public health, safety and

---

[4] The question of whether full faith and credit required the federal government to give effect to a state pardon under federal firearms law was resolved by Congressional action. See Thrall v. Wolfe, 503 F.2d 313, 316 (7th Cir. 1974) (holding full faith and credit did not require elimination of federal statutory disability based on state conviction despite existence of state pardon, where pardon not expressly based on a determination of innocence), cert. denied, 420 U.S. 972, 95 S. Ct. 1392, 43 L. Ed. 2d 652 (1975), superseded by statute, Firearms Owners Protection Act, Pub. L. 99-308, 100 Stat. 450.

welfare provision of N.J.S.A. 2C:58-3c(5). Accordingly, while Clifton may have uncovered reasons beyond the convictions that would allow a court to find that issuance of the permits to Winston would not be in the interest of public health, safety or welfare, it elected to proceed solely upon his New York convictions and the judge limited her decision accordingly. We need not address whether the evidence would have supported denial of the permits on other grounds.

Although hardly critical here as the decision under review rested elsewhere, we note that this court has addressed, and rejected post District of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed.2d 637 (2008), Winston's argument that the public health and safety exception of N.J.S.A. 2C:58-3c(5) is unconstitutionally vague. In re Dubov, 410 N.J. Super. 190, 196-97 (App. Div. 2009). We do not find that McDonald v. City of Chicago, 561 U.S. 742, 130 S. Ct. 3020, 3026, 177 L. Ed. 2d 894, 903 (2010), alters our thinking, as it did not address due process issues but merely extended Heller's holding to the States. "We cannot conclude that the [Second] Amendment or the Court's recent decisions require this State to dismantle its statutory scheme addressing the risks of misuse and accidental use [of firearms] in public places devised long ago and developed over many years. This scheme is crafted to burden the

exercise of the right to use handguns for lawful purposes as little as possible, without abandoning this effort to maintain order and safety in public places." In re Wheeler, 433 N.J. Super. 560, 617 (App. Div. 2013) (addressing constitutionality of the State's carry permit law).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION