**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0713-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JELUDY TAVAREZ-
RODRIGUEZ,

    Defendant-Appellant.

_____

Argued March 24, 2025 – Decided July 14, 2025

Before Judges Berdote Byrne, Jacobs and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 22-04-0566.

Eric W. Feinberg argued the cause for appellant (Caruso Smith Picini, PC, attorneys; Eric W. Feinberg, on the briefs).

Viviana M. Hanley, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Viviana M. Hanley, of counsel and on the brief).

PER CURIAM

Defendant Jeludy Tavarez-Rodriguez appeals from a Criminal Part order denying her application to be admitted to the pre-trial intervention program ("PTI") and to dismiss the indictment that charged her with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1).[1] Defendant lived in Pennsylvania and had a permit to carry a handgun there; however, she did not have similar licensure in New Jersey, nor had she ever applied for that authorization. After she was indicted on the weapons charge, she argued before the trial court that she should be permitted to carry her weapon in New Jersey under the Full Faith and Credit Clause ("the Clause") of the United States Constitution. U.S. Const. art. IV § 1. In a cogent written opinion, the motion judge denied the application, finding that the Clause did not permit the relief defendant requested, nor did the recent United States Supreme Court in N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), prohibit her prosecution. We agree with the motion judge and affirm.

---

[1] Defendant has only briefed the issues related to the dismissal of the indictment and not the denial of PTI. We decline to address any issues concerning the denial of the PTI application. Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021), aff'd as modified, 252 N.J. 265 (2022); See R. 2:6-2(a)(5).

I.

After defendant was stopped by Medford Township police officers for speeding, the arresting officer detected an odor of alcohol from defendant's vehicle. He consequently directed her to exit the car. She complied, and the officer observed a loaded handgun lying on the driver's side floor. Defendant admitted ownership of the gun and informed the officer that she held a valid Pennsylvania permit to carry the firearm in that Commonwealth.

Defendant was indicted for second-degree unlawful possession of a handgun under N.J.S.A. 2C:39-5(b)(1). The State denied her initial application for admission to PTI citing concerns about her criminal history that included a previous conviction for driving while intoxicated in Pennsylvania, a pending charge for the same offense in Ohio, and multiple violations of custodial release conditions. She moved to dismiss the indictment and, alternatively, to compel her admission to PTI. After the trial court denied both applications, she pled guilty to the indictment and received a three-year, non-custodial term of probation.

Defendant appealed and raises a single issue for our consideration:

> POINT I  THE STATE OF NEW JERSEY MUST RECOGNIZE CARRY PERMITS ISSUED BY PENNSYLVANIA.

A-0713-23

A.      Prosecution of Defendant Violates the Full Faith and Credit Clause of the Constitution [U.S. Const. art. IV § 1].

B.      Prosecution of Defendant Violates [N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022)].

## II.

We defer to a motion judge's decision to dismiss an indictment and reverse only if we conclude the judge misapplied discretion. State v. Twiggs, 233 N.J. 513, 532 (2018). However, because the decision to dismiss involves a legal question, we review the motion judge's interpretation of the constitutional issues presented in this appeal de novo. Ibid.

Defendant first argues New Jersey must cede to Pennsylvania's gun permit statute under the Clause. According to defendant, because New Jersey does not recognize Pennsylvania gun licensure requirements, it creates a "disjointed system which seeks to criminalize the law-abiding." We disagree and conclude New Jersey is within its legal rights to enforce its own gun-permitting laws and is not constitutionally required to honor Pennsylvania gun-permitting statute.

Article IV, Section 1 of the U.S. Constitution and the Full Faith and Credit Act (28 U.S.C. § 1738) requires states to recognize the public acts, records, and judicial proceedings of other states. This principle helps maintain

4                                                                                          A-0713-23

unity and judicial efficiency by ensuring that states respect each other's legal decisions, thus preventing duplicative litigation and waste of judicial resources.  See Simmermon v. Dryvit Sys., Inc. 196 N.J. 316, 329-30 (2008) (citing Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 703-04 (1982)).

The Clause, however, is not absolute.  It "does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state, even though that statute is of controlling force in the courts of the state of its enactment with respect to the same persons and events."  In re Winston, 438 N.J. Super. 1, 9 (App. Div. 2014) (quoting Pac. Emps. Ins. Co. v. Indus. Accident Comm'n, 306 U.S. 493, 502 (1939)).  To that end, it "does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'"  Baker by Thomas v. Gen. Motors Corp., 522 U.S. 222, 232 (1998) (quoting Pac. Emps., 306 U.S. at 501).  Consequently, such "[a] rigid and literal enforcement" of the Clause, "without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but

A-0713-23

cannot be in its own." Alaska Packers Ass'n v. Indus. Accident Comm'n., 294 U.S. 532, 547 (1935).

Consistent with these principles, we previously observed the Clause would not require automatic adherence to a neighboring state's licensing requirements as it applied specifically to firearm ownership. Winston, 438 N.J. Super. at 9 (holding "[t]here is no constitutional requirement that New Jersey deem [defendant] not disqualified for a permit under its firearms law just because [another state] has seen fit to do so under its law."). In Winston, we considered whether the applicant in that case, who had taken affirmative steps to apply for licensure in New Jersey, was unconstitutionally precluded from that perceived entitlement. Ibid.

In the present matter, the facts are different. Here, at the time of the offense, defendant had not attempted to apply for a New Jersey firearms permit that would require her to be subject to the process created to receive that authorization. Impermissibly, defendant sought to side-step the procedural and substantive scrutiny of our Legislature requiring that all New Jersey firearm licensees be "responsible, law-abiding, and appropriately trained individuals who would not pose undue safety risks if armed in public places." N.J.S.A. 2C:58-4.2(c).

Specifically, New Jersey allows the issuance of a license to carry a handgun only following satisfactory completion and administrative (and potential judicial) approval of a comprehensive application. N.J.S.A. 2C:58-4. Restrictions follow licensure, including a prohibition that the permit "shall not be construed to authorize a holder to carry a handgun openly . . . ." Ibid. Among other requirements, under N.J.S.A. 2C:58-4, the application requires nonrelative character references who can speak to the applicant's fitness to carry a handgun (2C:58-4(b)), a criminal background check (2C:58-4(c)), and a training course in safe handling and storage (2C:58-4(g)). Additionally, an "applicant must 'not [be] subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)],' which consider the applicant's age, mental and physical health, criminal history, and potential danger to public safety." State v. Wade, 476 N.J. Super 490, 504 (alterations in original) (quoting N.J.S.A. 2C:58-4(c)); see also N.J.S.A. 2C:58-3(c).

Pennsylvania's licensing requirements are different both in the application's matter and in its form. See 18 Pa. Cons. Stat. § 6109. Some of the requirements for licensure in Pennsylvania are broader than those required in New Jersey, and others more narrowly drawn. See ibid. For instance, New Jersey permits must be renewed every two years, and those in Pennsylvania,

every five.  N.J.S.A. 2C:58-4(a); 18 Pa. Cons. Stat. Ann. § 6109(f)(1).  New Jersey firearm carry permits require no fewer than four character references and Pennsylvania requires none.  N.J.S.A. 2C:58-4(b).  New Jersey mandates applicants complete an approved firearm safety course, whereas Pennsylvania has no such requirement.  N.J.S.A. 2C:58-3(c).

Additionally, Pennsylvania explicitly and implicitly prohibits the form of comity advocated by defendant in this case and rejects the blanket entitlement defendant claims.  According to its authorizing statute, any license issued in Pennsylvania is nominally restricted to the Commonwealth's borders.  18 Pa. Cons. Stat. § 6109 ("A license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle throughout this Commonwealth.").

Because the licensing requirements vary between the two states, both New Jersey and Pennsylvania are permitted to set their own qualifications as they see fit, so long as they remain within constitutional parameters.  The additional New Jersey requirements, which the state is free to impose, further define characteristics and qualities for which Pennsylvania does not require.  Therefore, the automatic reciprocity requested by defendant does not exist in this context.

A-0713-23

Next, defendant argues that New Jersey's prosecution of defendant is unconstitutional because it violates the Second Amendment to the United States Constitution and the rule established by the United States Supreme Court in Bruen. Specifically, as she did before the motion judge, defendant argues she is immune from New Jersey firearms licensure statutes and regulations because she held a valid Pennsylvania permit. We disagree.

According to the Second Amendment, "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment protects the right of individuals to keep and bear arms apart from service in a militia. D.C. v. Heller, 554 U.S. 570, 582 (2008). The Amendment "is fully applicable to the States" through the Fourteenth Amendment. McDonald v. City of Chicago, 561 U.S. 742, 750 (2010). In short, Heller and McDonald "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 597 U.S. at 8-9. This precedent, however, does not preclude any state from regulating handgun possession for their state.

In Bruen, the Court expressly endorsed state gun licensing and permit systems. Wade, 476 N.J. Super. at 502-03 (stating "Bruen expressly endorsed gun-permitting regimes that contained narrow, objective, and definitive standards to guide officials in determining whether applicants were 'in fact, law-abiding, responsible citizens.'" (quoting Bruen, 597 U.S. at 38 n.9)).

Additionally:

> [T]he [United States Supreme] Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense [and] . . . does not affect the existing licensing regimes—known as "shall-issue" regimes—that are employed in [forty-three] States.
>
> . . . .
>
> Likewise, the [six] States including New York [and New Jersey] potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the [forty-three] shall issue States.
>
> . . . Properly interpreted, the Second Amendment allows a "variety" of gun regulations.
>
> [Wade, 476 N.J. Super. at 503 (fourth, fifth, and sixth alterations in original) (citing Bruen, 597 U.S. at 78-79 (Kavanaugh, J., concurring) (citations omitted)).]

The day after Bruen was decided, the New Jersey Attorney General issued Law Enforcement Directive No. 2022-07, consistent with Bruen,

10

instructing that a "justifiable need" was no longer required of applicants seeking a carry permit but that all other mandatory application requirements should be considered. Off. of the Att'y Gen., Law Enf't Directive No. 2022-07, Directive Clarifying Requirements for Carrying of Firearms in Public 1-2 (June 24, 2022). In December 2022, the New Jersey Legislature passed, and the Governor approved, a framework that re-committed to New Jersey's long-standing tradition requiring a person obtain a permit before carrying a firearm in public and eliminated the justifiable need requirement for this authorization. See L. 2022 c. 131.

We have already held that, "consistent with Heller and Bruen, New Jersey can continue to regulate who can purchase and carry a handgun in public so long as those regulations are consistent with the text of the Second Amendment and our Nation's historical tradition of firearm regulation." Wade, 467 N.J. Super. at 510. Moreover, the constitutionality of the "public health, safety or welfare" requirement for the issuance of a handgun purchase permit has been upheld following Bruen. In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 163, 193-94 (2023) (upholding the constitutionality of N.J.S.A. 2C:58-3(c)(5)).

"Properly interpreted, the Second Amendment allows a 'variety' of gun regulations."  Bruen, 597 U.S. at 80 (Kavanaugh, J., concurring) (quoting Heller, 554 U.S. at 636.).  The validity of state regulations of handgun possession is determined under the two-step approach adopted by the Bruen Court:

> We reiterate that the standard for applying the Second Amendment is as follows:  When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."
>
> [Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 49 n.10 (1961)).]

Permission given to the public to carry handguns has long been "the most closely-regulated aspect of" New Jersey's firearms statutes.  In re Preis, 118 N.J. 564, 568 (1990).  As early as 1882, New Jersey has regulated the carrying of handguns, and since 1905, it has required private citizens to obtain a permit before carrying firearms in public.  Wade, 476 N.J. Super. at 503

The regulatory and administrative requirements to secure permission to carry a handgun in New Jersey are robust.  Applicants must follow a two-step

12

process. First, the applicant must apply to the relevant law enforcement official—the chief police officer in the municipality, or, in some instances, the Superintendent of the State Police. N.J.S.A. 2C:58-4(c). In addition to the application, a potential licensee must secure the endorsement of at least four reputable nonrelative persons who have known the applicant for at least three years before the application and "who shall certify . . . that the applicant is a person of good moral character and behavior." N.J.S.A. 2C:58-4(b).

An applicant must also satisfy several other criteria. See N.J.S.A. 2C:58-4; N.J.S.A. 2C:58-3(c); see also N.J.A.C. 13:54-2.1 to 2.10; In re M.U., 475 N.J. Super. at 171-72, 178-80. Specifically:

> [an] applicant must "not [be] subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)]," which consider the applicant's age, mental and physical health, criminal history, and potential danger to public safety. N.J.S.A. 2C:58-4(c); see also N.J.S.A. 2C:58-3(c). The applicant must also demonstrate "familiar[ity] with the same handling and use of handguns," evidenced by certified completion of a training course, submission of scores, or passage of a test. N.J.S.A. 2C:58-4(c); see also N.J.A.C. 13:54-2.4(b) and (c).
>
> [Wade, 476 N.J. Super. at 504 (all but first alteration in original).]

Additional requirements include the applicant to demonstrate, among other things, he or she has no juvenile adjudications for certain weapons

13

offenses; is not the subject of a domestic violence restraining order; has not violated certain types of court orders; has not been committed due to mental health issues; is not a fugitive or the subject of an open warrant; and has complied with liability insurance requirements. See N.J.S.A. 2C:58-3(c)(6), (7), (10) to (15); N.J.S.A. 2C:58-4(d)(4); N.J.S.A. 2C:58-4.3.

After submission of the application, the chief or superintendent conducts the necessary background checks. N.J.S.A. 2C:58-4(c). If the chief or superintendent does not approve the application, the applicant may appeal to the Superior Court. N.J.S.A. 2C:58-4(d) to (e). The court is required to hold a hearing to allow the applicant to "proffer reasons why he satisfies the standard and respond to any questions from the judge." In re Carlstrom, 240 N.J. 563, 572 (2020).

If an applicant does not follow these requirements and carries a weapon without a permit, the State may prosecute that offender. Under N.J.S.A. 2C:39-5(b)(1), "[a]ny person who knowingly has in his possession any handgun . . . without first having obtained a permit to carry the same as provided in N.J.S.[A.] 2C:58-4, is guilty of a crime of the second degree."

We are not persuaded by defendant's argument that her prosecution was constitutionally infirm. Despite her argument to the contrary, Bruen only

permits the possession of a weapon—subject to an individual state's licensing requirements—that ensures "that those bearing arms in the jurisdiction are . . . 'law-abiding, responsible citizens.'" Bruen, 597 U.S. at 38 n.9 (quoting Heller, 554 U.S. at 635). Defendant failed to comply with New Jersey's firearm statutes, regulations, and mandate regarding the proper substance and procedure to carry a weapon in this State. Since defendant failed to follow those requirements, her prosecution is constitutional.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15                                                                    A-0713-23