**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0746-23

IN THE MATTER OF THE
DENIAL OF THE APPLICATION
FOR A RENEWAL OF A PERMIT
TO CARRY A FIREARM
BY J.K.

_____

Submitted September 9, 2025 – Decided September 19, 2025

Before Judges Sumners and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County.

Evan F. Nappen Attorney at Law PC, attorneys for appellant J.K. (Louis P. Nappen, on the briefs).

LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent State of New Jersey (Jennifer B. Paszkiewicz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Petitioner J.K.[1] appeals the trial judge's order upholding the denial of his application for a permit to carry a handgun (PTC) and granting the State's motion revoking his firearm purchaser identification card (FPIC). We affirm because we conclude there was substantial credible evidence in the record to support the trial judge's order that it would be contrary to "public health, safety, or welfare because [J.K. was] found to be lacking the essential character of temperament necessary to be entrusted with a firearm." N.J.S.A. 2C:58-3(c)(5). Additionally, we direct the trial court to correct an administrative oversight by issuing a gun permit application number for all future gun permit appeals per Administrative Office of the Courts, Administrative Directive #14-22, Criminal-Gun Permit Procedures (Dec. 22, 2022) (AOC Directive #14-22).

J.K. possessed an FPIC for about fifteen years. On July 2, 2022, Medford Township Police Chief Arthur E. Waterman, Jr. granted him a permit to purchase handguns.

On August 5, J.K. submitted an application for a PTC with the Medford Township Police Department. Two months later, Chief Waterman denied the application based on an investigation by Medford Township Patrolman

---

[1] We use petitioner and his neighbor's initials to protect their privacy. R. 1:38-3(f)(1).

Timonthy Shockley. J.K. promptly appealed the denial to the Law Division. While the appeal was pending, the State moved to revoke J.K.'s FPIC.

In an August 30, 2023 fact-finding hearing, the trial judge heard testimony from Chief Waterman, Patrolman Shockley, and J.K. The central issue involved an incident between J.K. and his next-door neighbors, which Chief Waterman determined was the basis to deny J.K.'s PTC application.

On May 13, 2022, the Medford Township police received report of a man with a handgun outside J.K.'s home. Police responded with a tactical approach—disabling all audible warning devices, deploying tactical rifles, making a tactical approach to the home—and called on the man to exit his residence. D.Q., J.K.'s neighbor, told police that J.K. exited the back of his home, walked to the fence separating their properties—where D.Q. and his family were looking at a turtle that had ventured into their backyard—and cocked a handgun. J.K. then walked in circles while holding the handgun.

J.K. came outside without incident. Recorded on police body-worn camera, J.K. told police that even though he did not hear D.Q. and his family talk about him, he armed himself out of concern they would enter his property. He said his concern was based on a prior incident when he alleged D.Q. threatened to kill him on his front step. The police later learned this prior

A-0746-23

incident occurred two years earlier, resulting in a municipal court ruling there was insufficient evidence of a threat. J.K. stated his neighbors did not come onto his property but went inside their own home. J.K. told police he held the handgun—into which he inserted a magazine with ammunition when he walked outside—at his side and did not point it at anyone. He admitted to holding the handgun at his side "[on] an angle" when he inserted the magazine, but he did not recall specifically how the firearm was positioned.

Before issuing a decision on J.K.'s PTC application, Chief Waterman reviewed a police report regarding a June 2020 incident where D.Q. allegedly threatened to assault J.K. and watched video footage of their encounter. J.K. filed a municipal court harassment complaint against D.Q. leading to mediation and a settlement agreement. D.Q. agreed to have no contact with J.K., "including verbal, looks, telephone, electronic, by using agents to communicate or harass, and any other form of communication." And because they are neighbors, D.Q. agreed that any property concerns would be addressed in writing.

Following mediation, but before the handgun incident, three other Medford Township police-investigated disputes occurred between J.K. and D.Q.

A-0746-23

and his family, which Chief Waterman believed provided context for J.K. brandishing his handgun.

On October 18, 2021, J.K. complained to the police that D.Q. attempted to reset his Gmail password, sign him up for various subscriptions, and requested quotes from various businesses in J.K.'s name. Police determined the activity reported by J.K. originated from an IP address associated with his residence.

In January 2022, D.Q. reported to the police that J.K. cyber-harassed him, registering him for newspaper and magazine subscriptions without his approval, and causing him to receive bills. Police determined the activity was associated with J.K.'s residence.

On May 12, 2022, the day before the handgun incident, D.Q.'s wife and J.K. clashed. She told police that J.K. was driving too quickly through the neighborhood, honked his horn at her, and made an obscene gesture to her juvenile daughter. She provided the police with video footage of the encounter and filed a harassment complaint against J.K.

The trial judge found both Chief Waterman and Patrolman Shockley credible. Considering the handgun incident in the context of the prior disputes between the neighbors, the judge found Chief Waterman had a sound basis to deny J.K.'s PTC based on the May 13 incident out of "well-grounded concern

A-0746-23

for the safety of the neighbors for whom . . . there were ongoing disputes," which "ha[ve] to be considered regardless of who is responsible for continuing the hostilities."

In contrast, the judge found J.K. "rather not credible" due to embellishment. He rejected J.K.'s contention—also raised in J.K.'s unsuccessful motion to dismiss at the close of the State's case—that the denial of the PTC was based on the inadmissible hearsay testimony of Chief Waterman and Patrolman Shockley. He noted hearsay is admissible "if it is deemed to be of credible character, but [his ruling] cannot rest entirely on hearsay evidence alone." He stressed there was first-hand testimony about the handgun incident from Patrolman Shockley and J.K., as well as the body camera video depicting J.K.'s explanation for taking his handgun outside because he feared his neighbors would come onto his property. The judge emphasized the body camera footage showed that D.Q. and his family were far enough away from J.K.'s property that they were not a threat to J.K. and that J.K. could not have heard D.Q. talking about coming onto his residence. The judge maintained J.K.'s expressed concern for his safety was not supported by the evidence. The judge pointed out that if J.K. wanted to see if D.Q. and his family were threatening to enter his property, he could have viewed his surveillance camera system that, as he testified,

6

covered his entire property, and called police if he believed D.Q. or his family posed a threat to his safety. The judge found Chief Waterman "had a well-grounded concern for the safety of [J.K.'s] neighbors [with] whom . . . there were ongoing disputes." Regardless of who was at fault for J.K. and his neighbors' continuing feud, the judge reasoned J.K.'s lack of judgment and insight, based almost exclusively upon the handgun incident, warranted denial of his PTC. The judge found no violation of J.K.'s Second Amendment right to bear arms because the incident demonstrated J.K. did not use his handgun "reasonably and responsibly." The judge documented his ruling in a September 26, 2023 order.

In his appeal, J.K. raises several challenges to the trial judge's order.

J.K. first asserts the judge's order contradicts N.Y. State Rifle & Pistol Association v. Bruen, 597 U.S. 1, 21-22 (2022), because it denies his constitutional right to bear arms. He argues he had the right to possess his handgun on his property, and the judge stripped him of his right given that he had not threatened anyone with a gun. J.K. contends that contrary to Bruen's objective analysis requirement, the judge engaged in a subjective analysis. See id. at 11. We are unpersuaded.

After the United States Supreme Court's decision in Bruen was issued, our court recognized "the public health, safety or welfare provision

7

[disqualification] [in N.J.S.A. 2C:58-3(c)(5)] has largely been applied in conjunction with the specific disabilities identified under various subsections of N.J.S.A. 2C:58-3(c), but where the facts do not quite rise to the level of those disabling conditions." In re M.U.'s Handgun Purchase Permit, 475 N.J. Super. 148, 179-80 (App. Div. 2023). This is consistent with our prior case law upholding the constitutionality of the "public health, safety or welfare" disqualification in In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 505 (2016), In re Winston, 438 N.J. Super. 1, 5 (App. Div. 2014), In re Dubov, 410 N.J. Super. 190, 195 (App. Div. 2009), and Burton v. Sills, 53 N.J. 86, 91 (1968). Id. at 193. As explained below, the trial judge objectively applied credible facts in the record to reach his findings under N.J.S.A. 2C:58-3(c)(5) that J.K. should not have a PTC nor a FPIC.

J.K. also contends the judge failed to make findings that he lacked "character of temperament" under N.J.S.A. 2C:58-3(c)(5). Based upon our de novo review of J.K.'s application, In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015), we discern no injustice in the judge's fact-findings, In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). The judge's finding that "public health, safety and welfare" would

A-0746-23

be in jeopardy if J.K. is allowed to purchase a gun and a PTC is supported by his credibility findings. We are not "convinced that those findings and conclusions were so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (internal quotations and citation omitted). The judge astutely considered the totality of circumstances, noting J.K.'s decision to exit his home with a loaded handgun was based on an unfounded belief that his neighbors were threatening to come onto his property by merely seeing them in their own backyard a distance away. The judge felt this was a bad omen for future disproportionate use of a gun given J.K.'s statement to police that he "may have to" shoot D.Q. or his family if they came onto his property again.

J.K. further argues the judge erred in basing his decision on inadmissible hearsay testimony and not granting his motion for dismissal. Our review of the record does not demonstrate the judge's decision rested exclusively upon hearsay. The judge primarily based his ruling regarding the handgun incident due to the first-hand observations of Patrolman Shockley and J.K. and the video-recorded statements of J.K. and D.Q. The neighbors' prior disputes merely provided a backdrop to explaining their acrimony towards each other. That said,

as our high Court held in Weston v. State, hearsay is generally admissible in reviewing an administrative decision. 60 N.J. 36, 51 (1972). "Hearsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony," but the Court added, "there must be a residuum of legal and competent evidence in the record." Ibid. "The residuum rule does not require that each fact be based on a residuum of legally competent evidence but rather focuses on the ultimate finding or findings of material fact." Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 359 (2013). In sum, we see no abuse of discretion in the judge's evidentiary rulings, Townsend v. Pierre, 221 N.J. 36, 52-53 (2015), and as noted, we discern no injustice in his fact-findings.

Finally, J.K. maintains the trial court failed to provide a docket number for his PTC application as required by AOC Directive #14-22. He maintains the lack of a docket number "frustrated . . . his attempt to appeal this matter to [our court] through the e-court system." The lack of a docket number was neither discussed at the fact-finding hearing nor formally presented to the judge for disposition. Normally, we decline to consider newly raised arguments because they are not jurisdictional in nature nor do they substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted).

However, the record does show that in response to counsel's request for a docket number, the judge's chambers, without referencing a statute, regulation, or administrative directive, advised "gun permit appeals do not receive docket numbers." This is contrary to AOC Directive #14-22, which requires "a universal numbering protocol for docketing and tracking [gun permit] appeals." We thus direct that all future gun permit appeals should comply with this directive. This administrative oversight has no bearing on the merits of the appeal. See R. 1:13-1.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

11

A-0746-23