**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1607-24

IN THE MATTER OF THE GUN
PERMIT APPEAL OF M.C., JR.
FROM THE DENIAL OF A
FIREARMS PURCHASER ID
CARD BY LAW ENFORCEMENT.

_____

Argued March 25, 2026 – Decided May 19, 2026

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. GPA-0007-24.

Matheu D. Nunn argued the cause for appellant M.C., Jr. (Einhorn Barbarito Frost Botwinick Nunn & Musmanno PC, attorneys; Matheu D. Nunn, Stilianos M. Cambilis, and Blair R. Zwillman, on the briefs).

Joseph F. Mackolin, Jr. argued he cause for respondent State of New Jersey (Dasti McGuckin McNichols Connors Anthony & Buckley, attorneys; Joseph F. Mackolin, Jr., of counsel and on the briefs).

PER CURIAM

Appellant M.C.[1] appeals the January 16, 2025, Law Division order affirming the denial of his application for a firearms purchaser identification card (FPIC).  We affirm based on our deference to the trial court's finding that M.C. falsified his application by failing to answer questions truthfully and by failing to disclose information pertaining to those questions.

I.

We discern the following facts and procedural history from the record.  In April 2024, M.C. filed an application for an FPIC and a handgun purchase permit with the Toms River Police Department (TRPD).  In reviewing the application, TRPD identified a 2016 police report from a concerned citizen who informed police that M.C., who was then twelve years old, made "concerning statements to other children in the neighborhood" regarding "digging holes for bodies in the woods, spray painting 'DIE' on a tree, making firework bombs, and threatening other children with a machete."  The concerned citizen located the machete in the woods and turned it over to TRPD.  Another citizen reported that M.C. had posted concerning song lyrics on his social media including, "I've been feeling down, but nobody knows I just wanna kill."  TRPD contacted M.C.'s

---

[1] We use initials to maintain the confidentiality of these proceedings.  R. 1:38-3(a)(2).

school to make them aware of the reports. The school required that M.C. undergo a fitness to return evaluation.

On May 10, 2024, then-Chief of Police Mitchell A. Little sent a letter to M.C. advising him that his application had been denied. Little found that M.C. had falsified his answers to the following application questions: (1) "Have you ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim, or permanent basis?"; and (2) "Have you ever been attended, treated, or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition?" M.C.'s response to both questions was "no."

On May 28, 2024, M.C. appealed the denial of his application to the Superior Court. On January 15, 2025, the Law Division judge convened a plenary hearing to review the denial.

Chief Little's successor, Peter Sundack, testified that in reviewing the application, TRPD became aware of a 2016 police report regarding M.C.'s fitness to return evaluation. Accordingly, TRPD determined that M.C. should have answered "yes" when responding to the two application questions concerning whether he had ever been committed to a mental institution or

3

hospital or "attended, treated, or observed" by a doctor or physician for a mental or psychiatric condition.[2]

Chief Sundack also testified that M.C. had communicated with TRPD regarding his answers to the application questions concerning a psychological evaluation. There was a notation on the application that in those conversations with TRPD, M.C. claimed the 2016 evaluation was "five minutes and the evaluator apologized to him."

Dr. Gerard Figurelli, a licensed psychologist, testified as an expert on behalf of M.C. Figurelli conducted a psychological evaluation to assist in rendering an expert report regarding M.C.'s eligibility for an FPIC. Figurelli opined that the information he received, including documentation provided by M.C.'s counsel, supported approval of the application for an FPIC.

Figurelli testified that M.C. reported being treated with medication for attention deficit hyperactivity disorder (ADHD) from sometime between the age of seven or eight years old until the age of ten. When Figurelli asked M.C. about his failure to disclose the 2016 fitness to return evaluation, M.C. explained that it was his understanding that although he had been seen at a hospital, he was

---

[2] There were other reasons for the denial based on past incidents that the trial court found were not proven and thus have no bearing on this appeal.

never confined or committed to one and never for a psychiatric illness or a diagnosed psychiatric condition. Figurelli also testified that M.C. did not consider his diagnosis of ADHD to be a psychiatric illness or mental condition. Accordingly, Figurelli testified that M.C. never intended to be deceptive in answering "no" to the questions concerning a psychiatric condition or confinement relating to mental health.

M.C. testified on his own behalf and stated that he applied for four handgun permits when he turned twenty-one years old and considered himself a firearms collector. He also testified that he engages in shooting and target practice with his friends. He was previously issued an FPIC for rifles and shotguns, not handguns.

M.C. testified that he received a phone call from TRPD Lieutenant Scott Moeller approximately two or three weeks after submitting his application, notifying him that his application was being denied. When Moeller asked if M.C. recalled the 2016 fitness to return evaluation, he testified that he "totally forgot" about the evaluation, but once he was reminded of it, responded that it was "only five minutes and the evaluator apologized" to him. M.C. acknowledged at the hearing that the evaluation was actually one to two hours in length.

5

When asked at trial by his counsel whether he had ever been confined or committed to a mental institution, M.C. responded "no," and that he had been observed on a temporary basis at Ocean Mental Health in Toms River. According to M.C., the fitness to return evaluation arose from a parent expressing concern over song lyrics he had posted on his social media account. M.C. testified that he had forgotten about the 2016 fitness to return evaluation and did not knowingly provide false information to the application questions inquiring into whether he had ever been committed to a mental institution or hospital or observed by a doctor or psychiatrist for any mental or psychiatric condition.

On January 16, 2025, the trial court issued a fifteen-page written decision and accompanying order affirming the denial of the FPIC application. The court addressed the two questions relating to M.C.'s mental health, finding that he did not falsify his answer to the first question. The court explained,

> The [a]pplicant's 2016 referral to Ocean Mental Health, even for a mandatory evaluation, does not constitute confinement or commitment within the ambit of the application's question. The second question, however, is more broad and asks if the [a]pplicant has ever been attended, treated, or observed for a mental or psychiatric condition.

6

With regard to the second question, the court determined that a credibility finding was necessary, based on "the inconsistencies in [a]pplicant's reporting on this issue." The court did not find M.C.'s testimony that he simply forgot that he was sent for a mental health evaluation in 2016 to be credible, based on his testimony at the hearing and his prior statements. The court also found that, in addition to the 2016 fitness to return evaluation, M.C. failed to disclose his ADHD diagnosis on his application despite "being treated with prescription medication for a diagnosed mental health disorder for a number of years."

Relying on our decision in Matter of R.W.T., 477 N.J. Super. 443, 466 (App. Div. 2023), the trial court explained that "disqualifying an application on the basis of a falsification on that application is 'integral and inseparable from the inherent structure of a gun-licensing regime.'" The court further reasoned that in this instance, "the focus of the denial is not on the [a]pplicant's current state of mental health, but rather on the [a]pplicant's failure to disclose this mental health history on the [a]pplication."

The court thereupon found that the record demonstrated by a preponderance of the evidence that M.C. gave false information on a permit to purchase a firearm. The court thus ruled that he was disqualified pursuant to N.J.S.A. 2C:58-3(c)(3), which requires disqualification of a person who

A-1607-24

"knowingly falsifies any information on the application form for a handgun purchase permit or firearms purchaser identification card."

This appeal follows. M.C. argues that the trial court's decision should be reversed because: (1) the trial court mistakenly determined that he knowingly falsified his response to the application question relating to whether he had ever been treated or observed by a doctor or psychiatrist; (2) the trial court erred by concluding that his nondisclosure of his ADHD diagnosis amounted to further falsification of his application; and (3) the police chief did not establish by a preponderance of the evidence that good cause existed for denial of the FPIC.

II.

We begin our analysis by acknowledging the governing legal principles. "An appellate court's review of 'a trial court's legal conclusions regarding firearms licenses [is] de novo.'" R.W.T., 477 N.J. Super. at 462 (alteration in original) (quoting In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015)). However, we "must accept the trial court's fact findings if they are supported by substantial credible evidence." Ibid. "Heightened deference should be given to the trial court's assessment of witness credibility because the court was able to observe the witnesses as they

testified." In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 171 (App. Div. 2023).

Turning to the substantive legal principles, "[i]n order to lawfully acquire a firearm in New Jersey, one must have first secured a firearms purchaser identification card and, in the case of a handgun, a permit to purchase a handgun [(PPH)]." In re Winston, 438 N.J. Super. 1, 6 (App. Div. 2014) (citing N.J.S.A. 2C:58-3(a) and (b)). "Applications for an FPIC or PPH are governed by N.J.S.A. 2C:58-3." R.W.T., 477 N.J. Super. at 460. "The statute lists a series of disqualifying circumstances including . . . that no FPIC . . . shall be issued 'to any person who knowingly falsifies any information on the application form for a handgun purchase permit or [FPIC].'" Id. at 461 (quoting N.J.S.A. 2C:58-3(c)(3)). "The provision does not account for, much less depend on, the applicant's reputation for veracity, but rather looks at the truthfulness of the information within the four corners of the application." Id. at 464. We explained that the falsification disqualification is "integral to and inseparable from the inherent structure of a gun-licensing regime" because "answering the questions on an application form is the initial step—and an essential part—of the background check process." Id. at 466.

"The statute requires the chief police officer or the superintendent of the State Police 'to investigate the application to determine whether or not the applicant has become subject to any of the disabilities set forth in this chapter.'" Id. at 461 (quoting N.J.S.A. 2C:58-3(e)). "A police chief's denial of an application for an FPIC/PPH is subject to de novo review by the Law Division." Ibid. "The chief has the burden of proving the existence of good cause for the denial by a preponderance of the evidence." Ibid. (quoting In re Osworth, 356 N.J. Super. 72, 77 (App. Div. 2003)). "[I]n evaluating the facts presented by the [c]hief, and the reasons given for rejection of the application, the court should give appropriate consideration to the [c]hief's investigative experience and to any expertise he appears to have developed in administering the statute." Ibid. (alterations in original) (quoting Weston v. State, 60 N.J. 36, 46 (1972)).

## III.

We focus on M.C.'s contention that the trial court improperly found that he knowingly falsified his answer to the application question concerning whether he had ever been treated or observed by a doctor or psychiatrist for any mental or psychiatric condition, warranting reversal of the trial court's ruling. M.C. maintains that the 2016 fitness to return evaluation occurred when he was twelve years old, and given the brief nature of that examination, it is

10

unreasonable to hold him to an understanding that the evaluation was in relation to any mental or psychiatric condition. He argues that his initial response, explained by his articulated lack of memory, was reasonable. He further asserts that there was no evidence presented to the trial court that he was ever told he was to undergo a "mental" evaluation.

M.C.'s arguments on appeal fail for essentially the same reasons that disqualified the applicant in R.W.T. Here, the trial court made a credibility determination based on M.C.'s testimony at the hearing and his prior contradictory statements. The court noted that it was "factually undisputed that [M.C.] was 'attended, treated, or observed' in a mandatory fitness evaluation" which he failed to report on his application.

In making its findings, the trial court carefully distinguished between the two application questions at issue, finding that M.C.'s response to the first question relating to confinement or commitment for a mental health or psychiatric condition was not knowingly false. However, the court found that the response to the second question concerning whether he had ever been "attended, treated, or observed" by a doctor or psychiatrist for any mental or psychiatric condition was knowingly false. The court explained,

> The [a]pplicant's 2016 referral to Ocean Mental Health,
> even for a mandatory evaluation, does not constitute

confinement or commitment within the ambit of the application's question. The second question, however, is more broad and asks if the [a]pplicant has ever been attended, treated, or observed for a mental or psychiatric condition.

Importantly, moreover, the court also found that M.C. was not credible in his testimony at the plenary hearing and rejected his testimony that he simply forgot about the 2016 evaluation when answering this question on his application. The court explained,

> Having had the opportunity to see the [a]pplicant's testimony at the hearing, and reviewing his testimony in light of his prior statements, this court does not find the [a]pplicant's testimony that he simply forgot that he was sent for a mental health evaluation in 2016 when he completed the [a]pplication for his firearms permits . . . to be credible. Despite the [a]pplicant's contentions, it is factually undisputed that the [a]pplicant was "attended, treated, or observed" in a mandatory mental fitness evaluation and, despite this evaluation being required as a result of his disturbing pattern of conduct, he failed to report it on the [a]pplication.

As we have already noted, an essentially identical question was addressed in R.W.T., 477 N.J. Super. at 474. In that case, one of applicant's contentions was that the trial court erred in finding that he knowingly falsified information on his application in failing to disclose having been seen by a psychiatrist. Ibid. We held that "[g]iven the deferential standard of our review of fact findings," there existed "no basis upon which to disturb the trial court's conclusion that

12

petitioner knowingly falsified information on his application." Id. at 475. We added that "[t]he trial court properly focused on petitioner's failure to disclose his mental health treatment on his FPIC/PPH application and on the contradictory statements he made during the hearing." Ibid.

We emphasize that the falsification disqualification is a fact-sensitive determination. In this instance, the trial court's credibility findings are supported by substantial credible evidence, namely applicant's own testimony. See id. at 474 (Appellate courts "are bound to accept the trial court's fact findings in a gun permit hearing if they are supported by substantial credible evidence."). In light of the "heightened deference" given to a trial court's credibility determination, we have no basis upon which to second guess the trial court's conclusion that applicant was not credible and that he knowingly falsified his response to an application question. See In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. at 171. As we have noted, the statute categorically requires disqualification of the application upon such a finding.

In these circumstances, we need not consider M.C.'s remaining arguments. We add that the falsification disqualification applies only to the application before us. Nothing in this opinion or in the trial court's ruling precludes M.C. from filing a new application that answers all questions truthfully and that does

13                                                                                    A-1607-24

not withhold information required to be disclosed.[3] Any future application must be reviewed and approved or denied based on its own merits.

To the extent we have not specifically addressed them, any remaining arguments raised by M.C. lack sufficient merit to warrant discussion. See R. 2:11–3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[3] Because the falsification provision is concerned with safeguarding the licensing scheme, and does not inquire into the applicant's individual fitness, we see no reason why M.C. is precluded from re-applying. See R.W.T., 477 N.J. Super. at 466 ("In practical effect, this provision establishes a procedural bar to the issuance of an FPIC or PPH, not a substantive one").